## STATE v. DAVID McKETHAN.

(Filed 20 January, 1967.)

**1. Criminal Law § 15—**

Motion for change of venue on the ground of unfavorable publicity in the county is addressed to the sound discretion of the trial court, and no abuse of discretion in the denial of the motion is shown when the court makes inquiry in regard to the matter, concludes from the inquiry that no reason appears why a fair jury could not be selected in the county, instructs the jury not to read or hear accounts of the trial, and defendant does not exhaust his peremptory challenges or challenges for cause.

**2. Criminal Law § 155—**

Where there is no objection to the solicitor's question to an officer as to the designation of the police file the photograph identified by prosecutrix as her assailant came from, and the court sustains defendant's objection to the officer's reply that the photograph came from the rape file (the prosecution being for rape), the matter is not ground for a mistrial, there being no objection until after the improper question had been asked and the answer in, and no motion to strike.

3. **Criminal Law § 91— Withdrawal of unresponsive answer of witness held to have obviated necessity for mistrial.**

   An officer, a witness for the State, was asked by the solicitor whether he knew the defendant prior to the incident constituting the basis of the prosecution for rape, the officer replied in the affirmative, and added that he had had the defendant "for other sex offenses". The court, in the absence of the jury, brought out the fact that the officer had made an investigation of defendant in regard to a matter that had been settled by the father of the defendant and the parents of the child in question, without any criminal charge against defendant, and offered to permit defendant's counsel to have the witness give this explanation on cross-examination. Defendant's counsel refused the offer, whereupon the judge recalled the jury and charged them not to consider the unresponsive answer of the witness. *Held:* The incident was not sufficient to require a mistrial.

4. **Criminal Law § 71— Evidence held to sustain finding that confession was freely and voluntarily made.**

   The defendant, both on the *voir dire* and at the trial, testified that he made no incriminating statements. The testimony on the *voir dire* tended to show that defendant was advised that he had a right to remain silent, to refuse to answer any questions, that any statement made by him could be used against him in court, that he was entitled to have a lawyer and, if he was unable to employ one, the court would appoint one for him, and that upon defendant's attention being called to incriminating circumstances, he made the confession offered in evidence, the entire interrogation lasting not more than an hour. *Held:* The evidence upon the *voir dire* sustains the court's finding that defendant's statement was freely, voluntarily and understandingly made, and its admission in evidence was not error. *Miranda v. Arizona*, 384 U.S. 436, having been decided subsequent to this trial, is not applicable to this case.

APPEAL by defendant from *Carr, J.,* February, 1966 Criminal Session, CUMBERLAND Superior Court.

The defendant, David McKethan, was indicted, tried, convicted, and given two life sentences in prosecutions for rape and kidnapping. The indictments were returned at the September 27 Session, Cumberland Superior Court. The indictment in 21267 charged the defendant with the capital felony of rape. The indictment in 21270 charged the defendant with the felony of kidnapping. Each indictment named Elaine B. Fendall as the victim.

At the September Session, 1966, the defendant moved for a change of venue on account of alleged unfavorable newspaper publicity in Cumberland County. The Court, after inquiry and hearing, denied the motion. The defendant, through court-appointed counsel, entered pleas of not guilty.

The State offered evidence which in short summary disclosed the following: On September 12, 1965, Elaine B. Fendall, age 19, came to Fayetteville from her home in Princeton, New Jersey. Her purpose was to marry Gary Hanson, a soldier then stationed at Fort

Bragg. On the night of September 14-15, after Hanson had completed his assignment of duty, he and Miss Fendall, who was staying at the host house, drove to Stevens Drive-in for refreshments. After leaving the drive-in they stopped at Pope Park, just off the Fort Bragg highway. The park was unlighted. The lights had been turned off the automobile. A man appeared at the window. Miss Fendall gave this account of what followed: "I heard a voice and when I just turned around I saw something white; blood spattered all over me from his (Hanson's) head." Hanson got out of the vehicle and the intruder chased him into the woods. In the meantime he screamed for Miss Fendall to run. She started toward the woods, fell down, and then returned to the automobile and while she was trying to get the vehicle started, "The man grabbed me. He hit me on the head with this big hammer."

When she became conscious again she was in the back seat of her automobile. The man who assaulted her was driving her automobile across railroad tracks. He proceeded along a dirt road to an old, abandoned house where he stopped. At this place, the man, threatening further use of the hammer, forcibly committed the crime of rape charged in No. 21267.

After the assault, the man left, giving instructions for Miss Fendall not to move until he had time to get away. After he left she reported the assault to the officers. Hanson had already alerted them. The officers procured medical aid for both injured parties. Thereafter, Miss Fendall accompanied the officers to police headquarters where she examined pictures in the police files. After reviewing 12-15 photographs she identified the picture of her assailant. The officer in charge of the photographs, in answer to the Solicitor's question, stated that the one from which Miss Fendall was able to identify her assailant was taken from the division of the police files designated, "Rape." After the answer was in, the defendant objected. The court promptly sustained the objection. No other objection to police files was interposed.

After Miss Fendall's identification from the photograph, the police immediately arrested the defendant at the home of his aunt, took him to police headquarters for questioning. He was placed in a lineup of four prisoners and identified by Miss Fendall. He was second in line. However, she stated that his hair, then slicked down, didn't look quite as she remembered it. When his hair was combed back, she was certain of his identity. She stated, however, that she remembered his saying, "I am not going to hurt you. I am not going to kill you." As a further test, the police officers placed the four prisoners out of sight and had each in turn walk behind a screen out of sight and repeat the words which the perpetrator of the assault had

used during the attack. She correctly recognized the defendant's voice. He was the fourth in line during this test.

Mr. Hanson was called as a State's witness. He corroborated Miss Fendall up to the time that he was chased from the automobile by the assailant. He testified the perpetrator of the attack struck him on the head with some object, inflicting a wound which required six stitches. After he was injured by the assailant who chased him into the woods, he screamed for Miss Fendall to get away. As soon as he had an opportunity he called the officers and gave the alarm.

The State offered a signed statement made to the officers by the defendant in which he admitted he assaulted Miss Fendall in her automobile, then drove the automobile to the old, abandoned house across the railroad tracks where he left her in the automobile. The defendant objected to the admission of the confession. The court excused the jury and in its absence conducted a detailed examination into the circumstances under which the statement was made. The investigation covers 41 pages of the record.

In substance the evidence taken in the absence of the jury disclosed the following: The defendant was arrested at the home of his aunt in the early morning of November 15, 1965. Upon the basis of Miss Fendall's description and her examination of the photographs, she identified him. Later she confirmed the identification by sight and by voice. He was taken to the sheriff's office and interrogated. The officer, at the beginning of the interrogation, advised him that he had a right to remain silent, to refuse to answer any questions, but that if he made any voluntary statements, they could be used against him in court. He was advised that he was entitled to have a lawyer, and if he was unable to employ one the court would appoint one for him. The officer offered to call his father and mother if he wanted to see them. When the defendant was first asked about his having attacked Miss Fendall, he replied, "You will never be able to pin that on me." When his attention was called to his wet shoes, cockleburs in the wet trouser cuffs, and Miss Fendall's positive identification, he admitted he had left his aunt's home and had walked to Pope Park where he saw a man and a woman in an automobile. The man attacked him. He picked up some object from the vehicle, struck the man with it and chased him into the woods. Thereafter he assaulted the woman in the car. He then drove several miles across some railroad tracks, down an old dirt road to an abandoned house where he left her, telling her not to move until he had time to get away. The interrogation lasted not more than one hour.

After telling the above story to Officer Snipes, two other officers were called in. The defendant repeated the story and agreed to sign

a written statement, the most of which he dictated. It was read by him and signed on the third page after placing his initials on pages one and two.

Mr. Starling, a justice of the peace, was called. He read the statement, the defendant read it, and the justice of the peace stated: "Those initials were put there immediately after I had read the statement and I had read it back to him. . . . He did not act afraid; he was more or less in a jovial mood. . . ."

The defendant testified on the *voir dire,* also to the same effect before the jury. In both instances he said he knew nothing about any assault on Miss Fendall and did not go to Pope Park at any time during the night of September 14-15, 1965; that he spent the night after 9:00 or 9:30 at the home of his aunt where he slept after watching television for awhile, and where he was arrested. He admitted before the jury that he had his pants (but not his shoes) on at the time of his arrest, and that he was asleep on the couch when the officers arrived. He denied having made any incriminating admissions to the police. He did say he signed a paper consisting of one page, but that it only provided for a lie detector test and a "head examination." He said no one warned him of any constitutional rights; that the first time he ever heard about rights was at the trial. He admitted he had a tenth grade education.

At the conclusion of the *voir dire* hearing, Judge Carr made detailed findings of fact in accordance with the State's evidence and concluded the defendant had been advised of his rights; that he had voluntarily, knowingly, and understandingly made the admissions in the three page statement. The statement was admitted in evidence before the jury over the defendant's objection.

Before the jury the defendant's counsel asked of Officer Snipes this question: "Did you know David McKethan at all prior to this particular evening in question, this incident?" The witness answered, "Yes, sir, I have had David for other sex offenses." Defendant's counsel moved to strike and for instruction that the jury disregard the statement. The jury was excused. While the jury was out the court reviewed the questions preceding the one above quoted. Defense counsel moved for a mistrial. The court replied: "Well, it is unfortunate the statement was made, but I feel that I could not withdraw a juror and order a mistrial. It can be taken care of by special instructions to the jury not to consider it. I call counsel's attention to the fact that Officer Snipes cannot be expected to know the precise rules of evidence in a case, and to some extent you were at least cracking the door when you asked the officer if he had known David McKethan before. You to some extent were in-

viting a statement you got. That would not have been true if Officer Snipes had been a skilled lawyer."

The court made inquiry of Officer Snipes, still in the absence of the jury, and ascertained he meant the following by what he said: He investigated a case which was settled between the parents, mother and father of the child involved, and David's father. No indictment or prosecution followed this incident. The court offered to permit defense counsel to cross-examine the witness before the jury about what he meant by having had David for other sex offenses. The opportunity to present the above before the jury was declined by defense counsel. The court recalled the jury and gave this instruction:

> "Gentlemen: Just before you retired to the jury room, a question was asked of Officer Snipes by Mr. Brown, counsel for the defense, if he had known the defendant before September 15, 1965, and Officer Snipes said that he had and then indicated in his answer some statement as to the type of investigation that he had had made in respect to him before. Now, that statement, that he had had him for somewhat similar kind of investigation he had made in connection therewith, as to the charge, if any, the jury will please not consider. Erase from your mind and do not permit it to in any way influence your verdict in this case. I instruct you that that statement is not competent and it will be your duty to dismiss it, disabuse your mind of it and not permit it to in any way affect your verdict. You are, therefore, asked by the court to erase that part of the statement from your mind. All right, proceed."

After the State rested, the defendant testified in his own defense. He stated the officers required him to take off all his clothes; that they kept him under questioning for a considerable time, and that he understood what he signed was for a lie detector test and a head examination. He stated that he spent the night from about nine o'clock until the time of his arrest at the home of his aunt where he remained until the officers arrived, early on November 15; that he knew nothing of any assault.

The jury returned a verdict of guilty of rape as charged in the indictment and recommended that the defendant's punishment be imprisonment for life. The jury also returned a verdict of guilty of kidnapping, and the court imposed a like sentence of imprisonment for life. The defendant excepted to the sentences, and appealed.

*T. W. Bruton, Attorney General, Millard R. Rich, Assistant Attorney General for the State.*
*Bobby G. Deaver for defendant appellant.*

HIGGINS, J.  The appellant's assignments of error on the appeal present three questions of law: (1) Did the court commit error by denying the motion for a change of venue? (2) Did the court commit error by denying defendant's motions for a new trial for that (a) Police Officer Studer stated the photograph by which the prosecuting witness identified the defendant was taken from the group section designated, "Rape," and (b) Deputy Sheriff Snipes, in answer to a question by defense attorney, said, "Yes, sir, I have had David for other sex offenses?" (3) Did the court commit error by admitting the incriminating statement given to Officer Snipes by the defendant after his arrest?

The defendant's motion for a change of venue on the ground of unfavorable publicity was addressed to the sound discretion of the court. The court made inquiry and concluded no reason was made to appear why a fair jury could not be selected from Cumberland County. Careful instructions were given the jury not to read or hear accounts of the trial. A motion for a change of venue or for a special venire from another county, upon the ground of unfavorable publicity, is addressed to the sound discretion of the trial court. *State v. Scales,* 242 N.C. 400, 87 S.E. 2d 916; *State v. Godwin,* 216 N.C. 49, 3 S.E. 2d 347; *State v. Lea,* 203 N.C. 13, 164 S.E. 737.

A challenge to the poll (to each prospective juror) may be peremptory within the limits allowed by law, or for cause without limit if cause is shown. The record fails to disclose that the defendant had exhausted his peremptory challenges, or that any juror was accepted to which he had legal objection upon any ground. *State v. Rorie,* 258 N.C. 162, 128 S.E. 2d 229; *State v. Corl,* 250 N.C. 258, 108 S.E. 2d 615. A defendant on trial has the right to reject any juror for cause or within the limits of his peremptory challenges before the panel is completed. *State v. Walls,* 211 N.C. 487, 191 S.E. 232; appeal dismissed, 302 U.S. 635, 82 L. ed. 494.

The defendant has assigned as error the court's refusal to withdraw a juror and order a mistrial because of two occurrences during the presentation of the State's case. After Miss Fendall had identified the photograph of the defendant from the police files, the solicitor asked the officer what designation in the police files the photograph came from. There was neither objection to the question nor to the source of the photographs. The officer answered, "Rape." Counsel then objected and the court sustained the objection. De-

fense counsel did not object until after the question had been asked and the answer was in. He did not move to strike. The solicitor's question was improper. The court sustained the objection as soon as the court had opportunity, and without waiting for a motion. Ordinarily failure to object in apt time to incompetent testimony will be regarded as waiver of objection and its admission is not assignable as error unless the evidence is forbidden by statute. *State v. Warren*, 236 N.C. 358, 72 S.E. 2d 763 (citing many cases). If the testimony is incompetent, objection thereto should have been interposed to the question at the time it was asked as well as to the answer when given. Objection not taken in apt time is waived. *State v. Hunt*, 223 N.C. 173, 25 S.E. 2d 598; *State v. Merrick*, 172 N.C. 870, 90 S.E. 257. The court had no opportunity to rule on the motion to strike because no such motion was made.

As a second ground for a mistrial, defendant cites the defense counsel's question and Deputy Sheriff Snipes' answer as here given: "Question: Did you know David McKethan prior . . . to this incident?" The officer answered, "Yes, sir. I have had David for other sex offenses." Defense counsel moved to strike and that the jury be instructed to disregard the statement. The court excused the jury and in its absence made inquiry of the officer as to what he meant by the statement. The officer said he had made an investigation of the complaint against the defendant but that the parents of the child and the father of the defendant settled the dispute without any criminal charge against the defendant. The court offered to permit defense counsel to have the witness give the foregoing explanation. Counsel elected not to offer the explanation; whereupon the judge recalled the jury and gave the charge heretofore quoted.

The final assignment of error involves the admissibility of the confession signed, sworn to, and admitted in evidence over the defendant's objection. When the statement was offered and challenged, the court excused the jury and in its absence followed the procedure approved in this state, heard evidence, both for the defendant and for the State, involving the circumstances under which the statement was made. *State v. Walker*, 266 N.C. 269, 145 S.E. 2d 833; *State v. Keith*, 266 N.C. 263, 145 S.E. 2d 841; *State v. Barnes*, 264 N.C. 517, 142 S.E. 2d 344.

The defendant testified on the *voir dire* (and later before the jury) that he spent the entire night of September 14-15 in the home of his aunt. According to his testimony he was not involved in any attack on Miss Fendall; that he was not advised of any constitutional rights. He further testified the officers took his clothes and continued the interrogation while he put on other clothes which the

officers furnished him. He signed a one-page paper which provided for a lie detector test and a head examination; that he can read and has a tenth grade education.

The officers testified they found the defendant in bed at the home of his aunt early on the morning of September 15. The bottoms of his trousers and his shoes were wet. He was taken to the interrogation room, fully advised of all his rights to remain silent, to refuse to answer questions; that if he made a statement it might be used against him in court; that he was entitled to call a lawyer, or if he was unable to employ one the court would provide one for him; that his father and mother would be called if he wanted to see them. They required him to change his clothes in order that those he wore might be sent to the technical laboratory for examination of what appeared to be splotches or bloodstains. However, the tests made at the laboratory were negative. The officers testified the defendant admitted he had intercourse with the prosecuting witness in the front seat of the automobile after he had the fight with her companion who had fled, and that she did not consent. He admitted that when he returned to the automobile after chasing Hanson into the woods that the girl asked him if he was going to drive off some place and kill her.

The signed statement, among other admissions, contained the following: "I, David McKethan, have read this statement which begins on page one and ends on page 3. . . . The statement was made by me freely, without hope or benefit of reward, without threat of punishment and without coercion, undue influence or inducement." Pages one and two contained his initials, which he denied. The bottom of page 3 contained his signature, which he admitted.

The objection to the foregoing statement is based on grounds different from that usually assigned. While the defendant states that he was interrogated in the absence of counsel and members of his family, and while his clothing was being removed and changed, yet he contends and has testified both at the *voir dire* and at the trial that he never made any incriminating admissions at any time. He admitted he signed page 3, but it provided for a lie detector test and head examination, and nothing more; so that according to his contention and testimony, both on the preliminary investigation and on the trial, he never made any incriminating admissions, and, therefore, he does not rely on coercion or undue influence, but upon the theory that the officers substituted a different paper for the one he actually signed. In his testimony he does not say or contend he was put in fear, or the failure to have an attorney, or any other reason caused him to make any incriminating statements. He has

contended he spent the entire night at the home of his aunt and did not go to Pope Park, and knew nothing about any assault on Miss Fendall. Three officers testified David told the story as it was recorded in the paper which he signed.

On the basis of the evidence of which the foregoing is its material substance, Judge Carr, on the *voir dire,* found the statement was freely, voluntarily, and understandably made, and, hence, admissible in evidence. The evidence supports the finding.

The case was tried on February 7, 1966. Judge Carr's decision on the admissibility of the statement is sustained by our decisions. *State v. Walker, supra; State v. Keith, supra; State v. Barnes, supra; State v. Elam,* 263 N.C. 273, 139 S.E. 2d 601. *Escobedo v. Illinois,* 378 U.S. 478 (1964) and other cases are not in conflict with this decision as we understand them. The rule stated in *Miranda v. Arizona,* 384 U.S. 436, decided June 13, 1966, is not applicable to this case which was tried four months earlier. *Johnson v. New Jersey,* 384 U.S. 719, 16 L. Ed. 2d 882.

Other matters discussed in defendant's brief, while not overlooked, are not of sufficient moment to require discussion. After full review, we conclude the defendant has had a fair trial, before a careful, painstaking, and impartial judge. The record discloses

No error.