## STATE v. ALBERT BOBBY CHILDS.

(Filed 3 February, 1967.)

**1. Indictment and Warrant § 5—**

Defendant is not entitled to be present in court, either in person or by his attorney, when the indictments are returned as true bills by the grand jury, and his motion to quash the indictments because neither he nor his attorney was present in court when the indictments were returned is properly overruled.

**2. Same—**

If defendant contends that the indictment should be quashed because not returned in open court by the grand jury, it is incumbent upon defendant, in making up the record, to have the record clearly show this defect, but in this case, the record failing to disclose in clear terms that the indictments were returned in open court and defendant having been convicted of capital offenses, motion for diminution of the record was allowed, and the certified copies of the criminal minute docket of the Superior Court conclusively show that the indictments were properly returned in open court by the foreman of the grand jury, fifteen members of the grand jury being present, and that the requirements of G.S. 15-141 were strictly complied with.

**3. Indictment and Warrant § 8—**

Separate counts charging burglary in the first degree and larceny of money from the building allegedly broken into and entered, may be joined in one indictment. G.S. 15-152.

**4. Criminal Law §§ 15, 167—**

Where, on the hearing of defendant's motion for change of venue on the ground that defendant could not obtain a fair trial by a jury drawn from the counties within the district because of unfavorable publicity, the court enters an order that a venire be drawn from a county in an adjoining district, the order for a special venire is tantamount to a denial of the motion to remove, and the court's order for the special venire is entered by virtue of the discretionary authority vested in the court by G.S. 1-86, and is not reviewable in the absence of manifest abuse of discretion.

**5. Jury § 4—**

In a prosecution for a capital felony the State is entitled to challenge for cause any prospective juror who has conscientious scruples against the infliction of the death penalty, and defendant's contention that the exclusion of jurors having such conscientious scruples would result in an imbalanced jury is untenable, since to exclude such jurors on the panel would result in jurors biased in favor of defendant, and the State, as well as the defendant, is entitled to trial by an impartial jury.

**6. Criminal Law § 91—**

Where hearsay evidence, which is of minor import and relates to a matter amply established by other competent evidence, is immediately withdrawn by the court upon defendant's objection and the jury instructed to disregard it, any prejudice in the admission of such evidence is cured.

7. **Criminal Law § 71—** **Evidence held to support conclusion that confession was voluntarily and knowingly made by defendant.**

Evidence upon the *voir dire* tending to show that an attorney employed by defendant's wife was present with defendant upon interrogation by officers, that the attorney advised defendant that he was charged with serious offenses and that he should not make any statement at all to the officers, and that, after the attorney left, defendant made the incriminating statement offered in evidence without any threat or promise on the part of the officers, that defendant was not under the influence of any intoxicating beverages, and that the entire period of interrogation lasted only some hour and a half, *held* to support the court's conclusion that defendant's confession was freely, voluntarily, and knowingly made. The decision in *Miranda v. Arizona*, 384 U.S. 436, having been rendered subsequent to trial of this action, is not applicable.

8. **Same—**

Findings of fact by the trial court upon the *voir dire* as to the voluntariness of defendant's confession are conclusive on appeal when supported by competent evidence.

9. **Criminal Law § 147—**

It is the duty of defendant to see that the record is properly made up and transmitted. G.S. 15-180.

10. **Criminal Law § 160—**

Where the record does not support defendant's contention that the court allowed counsel to argue in the presence of the jury the court's ruling that defendant's confession was freely and voluntarily made, defendant has failed to carry the burden of showing error, but in this case, defendant having been convicted of capital offenses, motion for diminution of the record was allowed, and the copy of the original transcript certified by the clerk of the Superior Court discloses that the jury was absent from the courtroom during the time the judge made findings of fact and conclusions of law and found that the confession was voluntary.

11. **Criminal Law § 118—**

The verdict of the jury may be interpreted and given significance by reference to the indictment, evidence and the charge of the court.

12. **Same; Burglary and Unlawful Breakings § 6—**

Where the indictment and the evidence relate to burglary in the first degree and the court instructs the jury that defendant is on trial for the capital crime of first degree burglary, clearly defines burglary in the first degree, and correctly charges the jury as to the permissible verdicts upon the evidence, *held* the verdict of guilty returned by the jury, with no recommendation of mercy, necessarily imports a finding of guilty of burglary in the first degree, and supports judgment of death. G.S. 14-52. In this case, defendant was prosecuted for rape and burglary in the first degree, and the jury returned a verdict of guilty as to both counts, without recommendation that the sentence be life imprisonment.

APPEAL by defendant from *Martin, S.J.,* November 1965 Session of BUNCOMBE.

Criminal prosecution on two indictments. The first indictment

charged defendant on 27 May 1965 with the felony and capital offense of rape on Mrs. Carrie Waller, a female, a violation of G.S. 14-21. The second indictment charged defendant in one count about twelve on the night of 27 May 1965 with burglary in the first degree in breaking into and entering the dwelling house of Mrs. Carrie Waller, actually occupied by Mrs. Waller at the time, with the intent to commit larceny, a violation of G.S. 14-51, and in the second count with the larceny on the same date from said dwelling house of $100 in money, the property of Mrs. Carrie Waller. Each of these two indictments was found a true bill by the grand jury of Buncombe County at the June 1965 Session of Buncombe, and returned by them as such in open court. At the same June 1965 Criminal Session the grand jury also found and returned in open court as a true bill a third indictment charging defendant in one count on 27 May 1965 with attempt to commit armed robbery of Mrs. Carrie Waller of money and other personal property, a violation of G.S. 14-87, and in a second count on the same date with a felonious assault on Mrs. Carrie Waller and inflicting upon her serious injuries not resulting in death, a violation of G.S. 14-32.

At the June 1965 Session defendant moved to quash the three indictments against him. The court denied the motion, and defendant excepted. Immediately thereafter at the June 1965 Session, defendant was arraigned and, through his court-appointed counsel, informed the court that he would stand mute. Whereupon, the court, pursuant to the provisions of G.S. 15-162, ordered a plea of not guilty to be entered on behalf of defendant in all three cases. Then the cases were continued until a later session for trial.

At the November 1965 Session of Buncombe, the indictment charging defendant with rape and the indictment charging defendant with burglary in the first degree in one count and larceny in another count came on for trial, and, on motion of the solicitor, the two indictments were consolidated by the court for trial. The third indictment charging defendant in the first count with attempt to commit armed robbery, and charging defendant in the second count with a felonious assault, was not tried at the November 1965 Session.

This is a summary of the State's evidence: On 27 May 1965 Carrie Davis Waller, a widow 70 years of age, lived in her home at 77 Woodward Avenue in a residential section of the city of Asheville. She was preparing to go to Arizona to visit her son. The gutters on her house were filled, and she wanted them unstopped before she left. On the afternoon of that day, she went to the home of Mrs. Robert D. Barbour, which was two doors below her house, to see if she could employ defendant, who was working for Mrs. Barbour at

STATE *v.* CHILDS.

the time, to clean out her gutters. She asked Mrs. Barbour if he would have time to come to her house and clean out her gutters, and Mrs. Barbour replied that he would. She went home, and soon thereafter the defendant came over and cleaned out her gutters. He was there about thirty minutes. She told him she was deaf and she would have to stay in the yard until he finished so that she could pay him, because she could not hear a knock if he came around to the back door. When he had finished the work, she gave him $1.50.

She lived in a very small house with two bedrooms, a living room, and a kitchen. On the night of 27 May 1965 she was not feeling well and retired in her bedroom about 7:30 p.m. She never wore her hearing aid at night, and she did not have it on when she went to sleep that night. She was dressed in a nightgown. When she retired that night, the front and back doors had double locks and were locked, the screen door was locked, and her windows were closed and locked. She was awakened by a man's arm across her throat. She immediately tried to get off on the other side of the bed, and began to scream. She had the sheet pulled up around her, and this man got on the bed with her and pinned her down. She was screaming, and he put his hand down her throat to shut off her screams. She fought with all the strength she had. She turned her head and saw him distinctly and recognized him. The man was the defendant. In spite of her fighting him with all the strength she had, he had sexual intercourse with her. He also put his private organ in her mouth and in her rectum. In the struggle in her bedroom, the bed fell down. He then started dragging her across the floor, and when he saw she could not walk, he picked her up and carried her to her deceased husband's bed in the next room, and had sexual intercourse with her a second time. Her strength "had gone," and she ceased to struggle. He carried her back to her bedroom, and had sexual intercourse with her the third time. The next thing she remembers she was standing before a chest of drawers in the living room, and defendant was standing there beside her. She said to defendant, "I don't know what you want. Is it money?" He replied, "Yes." She told him her keys to her chest were in the bedroom, and she went and got her bag. She got the keys out, and she was trembling so she could not open the chest. He struck her and she finally got it open and handed him what she thought was $150. Then he left. In leaving she saw him distinctly. He put on his hat that she had seen him wear so much coming up the street to Mrs. Barbour's to work. When he left, she was nude. Trembling all over, she went to the front door, unlocked it, got out on her steps and began to scream, and help came immediately. She described the man who had criminally assaulted her as the man who cleaned out her gutters.

She is deaf, but her sense of smell is very keen. She did not smell any odor of whisky on defendant's breath. She found her false teeth that had been knocked out and were on the bed on the floor.

Mrs. Ruth Luca lives across the street from Mrs. Barbour. On 26 May 1965 she went to bed at midnight, and was later awakened by cries for help. She looked out and saw Mrs. Waller standing in front of her home naked. Mrs. Waller said to her, "Oh, Ruth, it was horrible, it was horrible." She took Mrs. Waller into her bedroom. The bed was broken down and in shambles. She helped Mrs. Waller into a nightgown. The bed linen was on the floor, and it was all bloody, and in the corner of the living room there was a pile of clothing and it was all blood-stained.

Mrs. Charles A. Ricker resided near Mrs. Waller. In the early morning of 27 May 1965 she was awakened by horrible cries for help. She recognized Mrs. Waller's voice saying, "Mary Frances, for God's sake help me." She arrived there just after Mrs. Luca. Mrs. Waller was naked and was pleading for a doctor.

Police officers arrived around 2:30 a.m. Lt. J. G. Morris since 1 January 1958 has been a policeman in the city of Asheville assigned to the Fingerprinting-Identification Section. Since being assigned to do this work, he has taken several thousand fingerprints. In the Waller home he found and developed several latent fingerprint impressions — one beside the window which had been broken open in the back of the home. He lifted, developed, and photographed those latent fingerprints. He compared the photograph of the latent fingerprint which he found at the open window at the Waller house with the right index fingerprint of defendant, and, in his opinion, the fingerprint impression which he found on the rear window of the Waller home was the same as the print of the right index fingerprint of defendant. Lt. Morris found dog manure beneath the open rear window, and it had a footprint in it. He examined the linen on Mrs. Waller's bed and a stain thereon had the odor and color of dog manure.

About 2:30 a.m. she was carried to the hospital, where she was examined around 3:30 a.m. by Dr. Robert S. McDuffie in the emergency room of St. Joseph's Hospital. Dr. McDuffie saw a number of reddish mottled areas about her face and neck, a number of scrape marks about her face and neck, bruises on her back and low back, blood on her fingernails and fingers and around her mouth, and some blood around her ankles. He found the presence of male sperm outside as well as inside the vagina. He saw bruises and blood around her private organs. In his opinion, a man had recently had sexual intercourse with her.

Entrance into the Waller home had been by breaking open a

window in the rear of the house. A pair of hedge clippers were beneath this window. Mrs. Barbour identified this pair of hedge clippers as belonging to her.

The State offered in evidence a confession of the defendant in substance as follows: He had been out on the night of May 27 drinking with some friends at the bus station. He left the bus station and went to the A & W Drive-In at Woolsey Dip, hoping to see a man there about some employment. The place was closed, and he walked up the hill to the home of Mrs. Waller, where he had cleaned some gutters a day or two before. He knew she was hard of hearing, and he had heard her talk about plans for leaving town. He went there with the idea of breaking into her house and stealing something that he could turn into money, or some money. He broke out a glass in a window on the back side of the house with his hand and crawled in the window. After he got inside he did not turn the light on. He went through into the living room and into a front bedroom, where he noticed Mrs. Waller was in bed. She raised up and started to scream, and he grabbed her and muffled her scream with his hand. While scuffling on the bed with her, the bed fell and he just lost all control of himself and had sexual intercourse with her. After this, she offered to give him money and unlocked a drawer and got some money out. Her pocketbook was sitting on a table. He reached in the pocketbook and took a red billfold out, and realizing what he had done, he left through the window he came in.

Defendant offered no evidence.

Verdict as set forth in the case on appeal: "(T)he said Albert Bobby Childs is guilty of rape and burglary." The verdict on the burglary case, as set forth in the case on appeal, will be discussed in the opinion.

From a judgment of death by asphyxiation on the verdict of guilty of rape, and from a judgment of death by asphyxiation on the verdict of guilty of burglary in the first degree as charged in the indictment, the defendant appeals to the Supreme Court.

*Attorney General T. W. Bruton and Staff Attorney Wilson B. Partin, Jr., for the State.*

*Thomas White, Ruben Dailey, and Robert Riddle for defendant appellant.*

PARKER, C.J. The record contains 360 exceptions and 42 assignments of error. Many of the exceptions and assignments of error present the same question for decision, *e. g.*, many rulings of the judge granting the State's peremptory challenge for cause of a pros-

STATE *v.* CHILDS.

pective juror on the *voir dire* because the prospective juror stated in reply to questions by the State that he had conscientious scruples against the infliction of the death penalty by the State, or that by reason of such conscientious scruples and beliefs he could not render a verdict of guilty where a death sentence is mandatory. Many of the exceptions and assignments of error do not merit any discussion. To discuss all of them *seriatim* would cause us to write a long book, and would serve no useful purpose. We shall discuss only those assignments of error set forth in defendant's brief for which there is citation of authority, and those assignments of error which we deem merit discussion.

Before defendant's arraignment, defendant, through his counsel, moved to quash the three indictments against him. According to the record before us, defendant assigned no reason to support his motion to quash. The record shows simply, "MOTION DENIED - EXCEPTION No. 1." Defendant assigns as error the denial of his motion to quash the three indictments against him. We shall discuss only the two indictments for which he was placed on trial, to wit, the rape indictment and the burglary indictment.

In his brief he contends that the court erred in denying his motion to quash the three indictments for the following reasons: (1) "The Bills of Indictment were returned by the foreman of the Grand Jury to the court at a time when the defendant was not in court nor were his attorneys present in court." (2) "The record fails to disclose that the defendant was brought into open court and there present with his counsel upon the return of the Bills of Indictment or that Bills were even returned in open court." (3) "It is the returning of the Bill publicly, in open court and its being there recorded that makes it effectual. *State v. Cox*, 28 N.C. 440." (4) "It is submitted that the burglary bill of indictment attempts to charge several offenses and is defective."

In *S. v. Stanley*, 227 N.C. 650, 44 S.E. 2d 196, the defendant was tried upon an indictment charging him with the murder of his wife; he was convicted of murder in the first degree, sentenced to death, and appealed. At the opening of the trial, the defendant moved to quash the bill of indictment, because he was not present in court when it was returned and read. The motion was overruled, and defendant excepted. In its opinion the Court said:

> "Relative to indictment and trial there are two things guaranteed by the Constitution to one accused of crime; information as to the nature of the crime of which he is accused, and confrontation of his accusers. One of these requirements is satisfied by his arraignment, and if by plea of not guilty he puts himself upon his country the ensuing trial by jury in which he

may confront and examine the witnesses, satisfies the other. The exception seems to point to one or the other of these rights, neither of which was denied him. In a capital case the indictment is still required to be returned into open court by the grand jury in a body, or a majority of them. G.S. 15-141. In other cases it may be returned by the foreman. It may be assumed that the practice has been preserved in the case of capital felonies as an additional guaranty that the requisites to its validity have been duly observed.

"The indictment and its return are no part of the trial. The fallacy of the argument that it was in any way necessary that the defendant be present at once appears when we understand that the indictment is often found before the accused is even apprehended. It is not the practice to have defendant present although he may be in custody."

In the instant case, defendant contends that neither he nor his lawyers were in court when the indictments were returned in open court true bills. In the *Stanley* case, the defendant contended that the indictment should be quashed because he was not in court when the indictment was returned in open court as a true bill. This factual distinction in our opinion, and we so hold, in no way impairs the authority of the *Stanley* case on the point for which it is cited here, and it is controlling in the instant case.

In 42 C.J.S., Indictments and Informations, p. 856, it is said:

"An indictment is not void because accused was not present in the county when he was indicted. In the absence of a statutory provision to the contrary, a grand jury has the power to indict or present for a crime whether accused has been arrested and is in custody or not, jurisdiction not being in any way dependent on his arrest or custody."

Defendant further contends, "The record fails to disclose . . . that bills were even returned into open court." He cites in support of this contention *S. v. Cox,* 28 N.C. 440, which holds, *inter alia,* that it is the returning of the indictment publicly in open court, and its being there recorded, that makes it effectual.

On 30 August 1966 the Attorney General of North Carolina filed a motion in the Supreme Court suggesting a diminution of the record in the instant case on two grounds: First, that the transcript of the case on appeal originally certified to the Supreme Court by the Clerk of the Superior Court of Buncombe County does not disclose in clear terms that true bills of indictment were returned in open court against the defendant. Attached to his motion were certified copies of:

"1. Page 27, Criminal Minute Docket 33, Buncombe County Superior Court, January 4, 1965; pages 203 and 208, Criminal Minute Docket 33, Buncombe County Superior Court, June 7, 1965, showing the actual transactions in court with respect to the return of the bills of indictment against the defendant.

"2. [The second ground will be discussed later on in this opinion.]"

The Court in conference allowed this motion on 30 August 1966. Copies of the criminal minute docket of Buncombe County Superior Court on 7 June 1965, certified under the signature and seal of Zebulon Weaver, Jr., clerk of the Superior Court of Buncombe County, by deputy clerk Evelyn C. Boone, as set forth above in the Attorney General's motion and attached thereto, show that the indictment against defendant in the rape case here and the indictment against defendant in the burglary case here were returned in open court by J. G. Stikeleather, Jr., foreman of the grand jury, and 15 members of the grand jury; and that the two indictments were read in open court to the foreman and members of the grand jury, and that each indictment was reported a true bill and signed by the foreman of the grand jury, and so recorded in the clerk's minutes. The Clerk of the Supreme Court, by order of this Court, mimeographed the Attorney General's motion with the attached minutes of the Buncombe County Superior Court and filed it as an addendum to the record. The minutes of the court show that the requirements in S. v. Cox, supra, and G.S. 15-141 were strictly complied with.

There is no merit to defendant's contention that the burglary indictment charges several offenses, and is defective. In support of this contention, he cites no authority and simply makes the bald statement of what his contention is without analysis or discussion. It is true that this indictment charges two offenses, (1) burglary in the first degree, and (2) larceny of money from the building allegedly feloniously broken into and entered, as alleged in the first count, but the bill is not defective. These two counts, by virtue of G.S. 15-152, may be joined in one indictment in separate counts. See also S. v. Knight, 261 N.C. 17, 134 S.E. 2d 101.

Defendant's assignment of error that the court erred in denying the motion to quash the indictments for rape and burglary is overruled.

At the 23 August 1965 Criminal Session of Buncombe, Judge Raymond B. Mallard presiding, the three indictments here against defendant, as set forth above, were called for trial. Before proceeding with the trial defendant's court-appointed lawyers, members of the Buncombe County Bar, filed with the court a written motion alleging that due to the wide publicity given by the daily papers in

Asheville and by the radio in Asheville to the alleged offenses for which defendant was under indictment, and to the contents of a psychiatric examination and evaluation concerning defendant's sanity, and due to the very extensive discussion of defendant's cases by residents of Buncombe County and of the western area of the State, it is impossible for defendant to obtain a fair and impartial trial by jurors from Buncombe, Madison, Haywood, Henderson, Transylvania, Swain, Cherokee, Jackson, Polk, McDowell, Burke, Yancey, Avery, Mitchell, Rutherford, Clay, Graham, Macon, or Watauga Counties. Wherefore, defendant prays that the court in its discretion enter an order removing the cases for trial "to some other county outside the area served by the Buncombe County news media and one other than the counties mentioned in this motion." Defendant offered evidence in support of his motion, and the State offered evidence against it. Judge Mallard entered an order finding as a fact that there is no evidence of any prejudice created against defendant by any news media, or otherwise, that would prevent defendant from obtaining a fair and impartial trial in Buncombe County by a jury drawn as provided by law from McDowell County. Wherefore, Judge Mallard acting pursuant to G.S. 1-86, and upon his own motion, instead of making an order of removal from Buncombe County, recited in his order, "this court will by proper order cause as many jurors as may be necessary to select a fair and impartial jury to try the defendant to be summoned, as provided! by law, from McDowell County." From this order, defendant appealed to the Supreme Court.

Defendant on 21 October 1965 filed in the office of the Clerk of this Court a statement of case on appeal to be heard at the Spring Term 1966 of the Supreme Court. Appeals from the Superior Court of Buncombe County for the Spring Term 1966 were scheduled to be heard by this Court during the week of 15 February 1966. On 22 October 1965 the Attorney General filed a verified written motion with this Court that the cases of defendant be advanced on the docket for hearing, pursuant to Rule 13, Rules of Practice in the Supreme Court, 254 N.C. 783, 792, for the reason set forth in his motion. On 28 October 1965 the Attorney General notified attorneys for defendant that upon the call of appeals from the Tenth and Twentieth Districts on Tuesday, 2 November 1965, at 10 a.m., in the Justice Building, Raleigh, North Carolina, the State of North Carolina will move before the Supreme Court that the case of *State of North Carolina v. Albert Bobby Childs* be advanced on the docket for the reason set forth in his written motion heretofore forwarded to him. Attorneys for defendant filed no answer to the Attorney General's motion, so far as the records of this Court disclose.

This Court, in a per curiam opinion filed 10 November 1965 and reported in 265 N.C. 575, 144 S.E. 2d 653, allowed the Attorney General's motion, held that the appeal was fragmentary and premature, and consequently falls under the ban of the general rule forbidding fragmentary and premature appeals from interlocutory orders, and dismissed the appeal. The Court in its opinion stated: "Judge Mallard's interlocutory order does not put an end to these cases, and it does not destroy or impair or seriously imperil any substantial right of this defendant, for the reason that defendant's remedy is to note an exception at the time of the entry of Judge Mallard's order, as he did, to be considered on appeal from a final judgment adverse to defendant, if there is one." The Attorney General's verified written motion is set forth in the per curiam opinion.

Defendant assigns as error the denial by Judge Mallard of his motion for change of venue.

Defendant's motion for a change of venue was addressed to the sound legal discretion of Judge Mallard. *S. v. Scales,* 242 N.C. 400, 87 S.E. 2d 916. When Judge Mallard on his own motion, instead of making an order of removal, entered an order that a venire of jurors be drawn, according to law, from the jury box of McDowell County, a county in an adjoining district to Buncombe, to obtain a fair and impartial trial of defendant in Buncombe County, he was acting pursuant to authority vested in him by G.S. 1-86, to exercise his sound legal discretion as to whether the case should be removed from Buncombe County for trial or tried in that county with a jury drawn from another county. This was tantamount to a denial of a motion to remove the cases to another county for trial. *S. v. Moore,* 258 N.C. 300, 128 S.E. 2d 563. Judge Mallard's order, entered by virtue of authority vested in him by the General Assembly in G.S. 1-86, is not reviewable, unless there has been a manifest abuse of his discretion, and no such abuse of discretion appears in this case. *S. v. McKethan,* 269 N.C. 81, 152 S.E. 2d 341; *S. v. Scales, supra; S. v. Culberson,* 228 N.C. 615, 46 S.E. 2d 647; *S. v. Allen,* 222 N.C. 145, 22 S.E. 2d 233; *S. v. Lea,* 203 N.C. 13, 164 S.E. 737; *S. v. Kincaid,* 183 N.C. 709, 110 S.E. 612. This assignment of error is overruled.

Defendant assigns as errors many rulings of the trial judge granting the State's peremptory challenge for cause of a prospective juror on the *voir dire* because the prospective juror had conscientious scruples against the infliction of the death penalty by the State. These assignments of error are overruled.

It is a general rule that the State in the trial of crimes punishable by death has the right to an impartial jury, and in order to secure it, has the right to challenge for cause any prospective juror

who is shown to entertain beliefs regarding capital punishment which would be calculated to prevent him from joining in any verdict carrying the death penalty. *S. v. Arnold,* 258 N.C. 563, 129 S.E. 2d 229; *S. v. Vann,* 162 N.C. 534, 77 S.E. 295; *S. v. Vick,* 132 N.C. 995, 43 S.E. 626; *S. v. Bowman,* 80 N.C. 432; Annot., 48 A.L.R. 2d 563. The annotation in A.L.R. 2d cites in support of this general rule cases from 35 states (including North Carolina) and from the United States courts. In accord, 4 A.L.R. 2d, Later Case Service, p. 1273, and supplement.

In *Turberville v. United States,* 303 F. 2d 411, cert. den. 307 U. S. 946, 8 L. Ed. 2d 813, the Court held that the trial court's action in excusing for cause on *voir dire* veniremen who answered affirmatively questions as to whether they were opposed to capital punishment was not error. The Court, in a scholarly discussion of the question, said in part:

> "Opposition to capital punishment may be for any one of a variety of reasons. They range from an unshakable religious conviction as stark as the Old Testament Commandment to a mere intellectual or philosophical distaste. Not all 'opposition' to this penalty creates incompetence for jury service. So not all who are 'opposed' to capital punishment are necessarily unqualified for service in a capital case. The nub of disqualification on this ground is whether the opposition is of such nature as to preclude an impartial judgment on the facts and the law of the case to be tried.
>
> ". . . What Simpson is really asserting is the right to have on the jury some who may be prejudiced in his favor — *i. e.,* some who are opposed to one possible penalty with which he is faced. We think he has no such constitutional right. His right is to absolute impartiality."

The whole subject here under consideration was thoroughly explored in an exhaustive, scholarly opinion by Circuit Judge Hincks writing for a unanimous Second Circuit in *United States v. Puff,* 211 F. 2d 171, cert. den. 347 U.S. 963, 98 L. Ed. 1106. We refer to the *Puff* case and rely upon it.

Defendant contends that we should reconsider our decisions that in a prosecution for a capital felony the State is entitled to challenge for cause any prospective juror who has conscientious scruples or beliefs against the infliction of the death penalty by the State, for the following reasons: That he is entitled to a "balanced" jury, composed of jurors who believe in capital punishment and those who do not; that jurors who believe in capital punishment are more prone to convict than those who do not so believe; and that to ex-

clude jurors who do not believe in capital punishment denied him a fair and impartial jury from a cross-section of the community. These contentions have been refuted in *United States v. Puff, supra,* which case holds, *inter alia,* as stated in the eleventh and twelfth headnotes to this case:

"11. Under statute providing for prosecution of murder in first degree and making death penalty mandatory, upon conviction, unless jury recommends life imprisonment, a verdict must be unanimous both as to guilt and as to punishment. 18 U.S.C.A. § 1111.

"12. In prosecution for murder under statute making death penalty mandatory unless jury should recommend life imprisonment, defendant was not entitled to a balanced jury in the sense of including jurors who held scruples against imposition of death penalty. 18 U.S.C.A. § 1111."

In its opinion the Court said:

"It will readily be seen that this 'balanced' jury, which the defendant envisages, is in reality a 'partisan jury'; if, as he urges, it may include jurors with bias or scruples against capital punishment it must — if it is to have 'balance' — include also those with bias in favor of the death penalty as the punishment for murder. It is settled by *Andres v. United States,* 333 U.S. 740, 68 S. Ct. 880, 92 L. Ed. 1055, that under the Statute the verdict must be unanimous both as to guilt and as to punishment. As a result, as Mr. Justice Frankfurter noted in his concurring opinion, 333 U.S. at page 766, 68 S. Ct. at page 892, any juror 'can hang the jury if he cannot have his way' as to the sentence which *he* deems appropriate. These considerations lead to the conclusion that trials before 'balanced juries,' even on unanimous findings of guilt, would frequently result in disagreements. And disagreements on successive trials would result in practical immunity from murder. We cannot believe that the Statute was intended to have such a tendency."

This is said in Annot., 48 A.L.R. 2d, p. 563:

"Upon the theory that conscientious scruples against infliction of the death penalty under any circumstances, or equivalent beliefs, equally disqualify a juror for cause in a prosecution for a capital crime; whether the law prescribes the single punishment of death upon conviction, or invests the jury, upon conviction, with a discretionary power to assess death or life imprisonment according to the evidence and circumstances, the rule has become generally accepted that where the jury is vested

with such discretion the state may challenge for such cause because it is entitled to the maximum penalty if the proof shall justify it, and to contend throughout the trial and finally to the jury that the character of the crime justifies it."

It seems, according to the record before us, that defendant did not exhaust his peremptory challenges to the jury.

In *United States v. Puff, supra,* it is said:

"And often the failure of a party to exhaust his peremptory challenges is taken as convincing indication that, even if a talesman without sufficient justification had been excused for cause, at least those who were impanelled were indeed impartial. [To support that statement, voluminous authorities are cited.]"

Defendant has assigned as error the court's refusal to withdraw a juror and order a mistrial because during the presentation of the State's evidence James Sloop, a member of the Asheville fire department, testified as follows: "I went to Police Headquarters and obtained a picture of Albert Childs. I then went to the hospital and had Mrs. Carrie Waller identify the picture." The defendant objected and made a motion to strike. The court sustained the objection and allowed the motion to strike. Defendant then moved the court to instruct the jury to disregard it. The court instructed the jury, "Members of the Jury, you won't consider the statement of this witness as to what the prosecuting witness did in the hospital with him." For this reason, defendant moved for a mistrial, which the court denied, and he excepted. The court's prompt action in sustaining the defendant's objection and allowing his motion to strike and in instructing the jury at defendant's request not to consider the statement of the witness Sloop as to what the prosecuting witness did in the hospital with him would seem to render this occurrence not prejudicial, particularly as defendant's counsel did not request any more specific instruction to the jury by the judge. *S. v. McKethan, supra.* This assignment of error is overruled.

Defendant's assignment of error No. 41, based upon his exception No. 359, is: "Did the court err in allowing counsel to argue in the jury's presence concerning the court's ruling in the absence of the jury on a confession?" When we search through the record to find defendant's exception No. 359, and carefully read the statement of counsel referred to in defendant's exception No. 359, we find that counsel did not argue in the jury's presence concerning the court's ruling in the absence of the jury on a confession. This assignment of error is overruled.

Defendant assigns as error the ruling of the trial judge that the alleged confession by defendant on 27 May 1965 was voluntary and was admissible as evidence in the case. In his brief, "The defendant earnestly contends that the alleged confession made by him on the 27th day of May, 1965, was incompetent and should not have been admitted into evidence in this case in view of the fact that he had not been properly advised of his rights to counsel, that he was not represented by counsel at the time of his interrogation by the officers, that no counsel had been appointed for him and that he was not represented at the time of his preliminary hearing." This assignment of error is overruled.

The court conducted a preliminary examination in respect to the admissibility of the alleged confession. The State offered evidence in respect thereto. The defendant offered no evidence. After listening to the evidence the court made the following findings of fact:

"1)   That on May 27, 1965, the defendant Albert Bobby Childs was arrested and taken into custody of the Asheville Police Department.

"2)   That about 9:30 a.m., on said day, that the defendant was visited in the Asheville Jail Building by the witnesses Poore, Holland and Reynolds, and that all the aforesaid persons were together within the sight and hearing of each other.

"3)   That at said time the witness Holland served a warrant upon the defendant charging him with first degree burglary, by reading this warrant to the defendant.

"4)   That the witness Reynolds was introduced to the defendant as an attorney, as having been sent, to the defendant by the defendant's wife.

"5)   That the witness Reynolds is an able and experienced lawyer, competent and efficient in the trial of criminal cases in the Buncombe County Superior Court; and that he became a member of the bar in 1955, and has maintained his office for the practice of law in the City of Asheville of Buncombe County, since 1961, engaging in a general practice of law, handling civil and criminal matters.

"6)   That Attorney Reynolds advised the defendant that he did not have to make any statement; that any statement that he made might be used against him; that he should keep his mouth shut; that he was charged with first degree burglary, and that he would be charged with rape, and that either of these charges were serious charges, and that the defendant's life was in danger; that he told the defendant that he should not make any statement at all to the officers; that the officers

might not have sufficient evidence to convict him; and that he should not make any statement at all to the officers; that the officers had a right to question him, and that they would question him, and that he, Reynolds, could not remain with the defendant during the entire day;

"7)  That officer Holland is a Police Officer with some 19 years of experience in the Asheville Police Department; that he advised the defendant that he had a right to counsel; that he did not have to make any statement at all; that if he made a statement that it would be used against him in a court of law; that he could call his family or other persons —

"MR. DAILEY:  If your Honor please:  Is that in the record? I don't recall that.

"COURT:  You may make such exceptions to the Findings of Fact as you care to do.

"MR. DAILEY:  Exception to that.

"COURT:  You will have an opportunity to make them all at the conclusion. I do not think it is proper to put them in piecemeal.

"8)  The defendant was not under the influence of any intoxicating beverages on the morning of May 27th, 1965, and about 9:30 a.m.

"9)  That the defendant was not promised anything to induce him to make any statement to the officers; that he was not threatened in any way to induce him to make any statement to the officers; that he was not interrogated in relays or for an extended period of time; that the entire period of the interrogation, including the time when Attorney Reynolds was present, was some one hour and a half.

"10)  That after about 15 or 20 minutes, that Attorney Reynolds left the room, and that he heard the defendant answer, or begin to answer, some questions asked by the officers concerning an automobile; that the witness Reynolds returned to the room and again told the defendant that his life was in danger and that he should keep his mouth shut and not tell the officers anything.

"11)  That thereafter Attorney Reynolds left the Asheville Police Department Building and returned to his office.

"12)  That thereafter the defendant made a statement to the officers concerning the alleged offenses."

A reading of officer Holland's testimony shows that the judge's finding of fact No. 7 is supported by his testimony.

Based upon the facts found by him, the judge made the following conclusions of law:

"1) That the defendant was effectively advised as to his legal and constitutional rights as a person charged with a capital offense; that he was so advised by Officer Holland and by Attorney Joseph C. Reynolds.

"2) That the defendant knew and understood the advice so given him.

"3) That the statement made by the defendant to the witnesses Holland and Poore on the morning of May 27, 1965, about 9:30 a.m. and thereafter, was a voluntary statement by the defendant, made by him after knowledge of his Constitutional and legal rights; that it was not coerced or in any way made under duress or upon promise of leniency or hope of reward; and by making said statement, none of the Constitutional or legal rights of the defendant were impaired or infringed upon."

Based upon his findings of fact and conclusions of law, the judge held that defendant's confession was admissible in evidence, and defendant excepted.

The evidence is ample to support the findings of fact by the trial judge, which findings of fact are unchallenged by defendant except in the one particular stated above. These findings of fact are, therefore, conclusive on appeal and support his conclusions of law, and his findings of fact and his conclusions of law support his ruling that the confession was admissible in evidence. *S. v. Temple,* 269 N.C. 57, 152 S.E. 2d 206; *S. v. Gray,* 268 N.C. 69, 150 S.E. 2d 1; *S. v. Barnes,* 264 N.C. 517, 142 S.E. 2d 344; *S. v. Rogers,* 233 N.C. 390, 64 S.E. 2d 572, 28 A.L.R. 2d 1104; *S. v. Roberts,* 12 N.C. 259.

The trial of the instant case having occurred prior to the announcement of the decision by the Supreme Court of the *United States in Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, that decision has no application to this appeal. *Johnson v. New Jersey,* 384 U.S. 719, 16 L. Ed. 2d 882.

So far as the record before us discloses, there is no evidence as to whether or not defendant had a preliminary hearing before his trial in the Superior Court or whether he was bound over to the Superior Court or waived a preliminary hearing on these charges. The record is bare of information. If he did have a preliminary hearing, he made no statement in the preliminary hearing at all, so far as the record before us discloses.

Defendant in his brief makes no contention that Judge Martin made his findings of fact and conclusions of law and held that the confession of defendant was voluntary and admissible in evidence

in the presence of the jury; he does not in his brief mention this question at all. Certainly, it is not clear and manifest from the record before us that Judge Martin made his findings of fact, conclusions of law, and held that the confession of defendant was voluntary and admissible in evidence in the presence of the jury.

It is the duty of defendant to see that the record is properly made up and transmitted. G.S. 15-180; *S. v. Roux*, 263 N.C. 149, 139 S.E. 2d 189; *S. v. Jenkins*, 234 N.C. 112, 66 S.E. 2d 819; *S. v. Daniels*, 231 N.C. 17, 56 S.E. 2d 2, cert. den. 339 U.S. 954, 94 L. Ed. 1366; *S. v. Wray*, 230 N.C. 271, 52 S.E. 2d 878; *S. v. Frizell*, 111 N.C. 722, 16 S.E. 409.

This is said in 1 Strong's N. C. Index, Criminal Law, § 160: "The burden is on defendant not only to show error but also that the error complained of affected the result adversely to him. . . . Thus, where the matter complained of does not appear of record, defendant has failed to make irregularity manifest." The text is supported by citation of numerous of our cases.

(On 30 August 1966 the Attorney General of North Carolina filed a motion in the Supreme Court suggesting a diminution of the record in the instant case on two grounds: The first ground has been discussed before in this opinion. Second, the transcript on appeal originally certified to the Supreme Court by the clerk of the Superior Court of Buncombe County leaves doubt as to whether or not the trial judge made findings of fact in the presence of or out of the presence of the jury impanelled to try the case relating to the admissibility of statements made by defendant to police officers on 27 May 1965. Attached to his motion was a "certified copy of the original transcript of testimony in the Superior Court of Buncombe County, pp. 273 through 292, showing that the trial jury was absent during the findings of fact by the trial judge as to the admissibility of defendant's confession." The court in conference allowed this motion on 30 August 1966. The clerk of the Supreme Court, by order of this Court, mimeographed the Attorney General's aforesaid motion with attachments thereto, and filed it as an addendum to the record. A copy of the original transcript of testimony in the Superior Court of Buncombe County, certified under the signature and seal of the clerk of the Superior Court of Buncombe County by deputy clerk Evelyn C. Boone, shows on pp. 273 through 292 that the jury was absent from the courtroom during the time the judge made findings of fact, conclusions of law, and held the confession to be voluntary and admissible in evidence. We are advertent to our rule that the record imports verity and the Supreme Court is bound thereby, and the Supreme Court can judicially know only what appears of record. 1 Strong's N. C. Index, Criminal Law, § 151. De-

fendant is under two sentences of death. Despite the fact that defendant in his brief makes no contention that the jury was in the courtroom when the judge made findings of fact, conclusions of law, and held that the confession was admissible in evidence, we, realizing the responsibility that is ours in passing upon an issue of defendant's life or death, and in such a case unwilling to rely entirely upon the presumption of regularity, decided *ex mero motu*, in spite of our rule, to examine the original transcript to see if the jury was absent from the courtroom when the judge made his findings of fact, conclusions of law, and held the confession admissible in evidence, because if the jury was in the courtroom, it was manifest error. *S. v. Walker*, 266 N.C. 269, 145 S.E. 2d 833.)

As stated above, the verdict, as set forth in the case on appeal, reads: "The said Albert Bobby Childs is guilty of rape and burglary." On 5 September 1966, the Attorney General of North Carolina filed a second motion in the Supreme Court suggesting a diminution of the case on appeal for the following reason: That the case on appeal does not disclose in clear terms that the jury returned a verdict in case No. 65-425 charging defendant with first degree burglary, or burglary in the first degree without recommendation of mercy, and he attached to his motion a certified copy of page 507, Criminal Minute Docket 33, Buncombe County Superior Court, 2 December 1965, showing the true verdict returned by the jury against the defendant in case No. 65-425 wherein the defendant was charged with first degree burglary. We allowed this motion on 7 September 1966. The minutes of the court as certified to us under the signature and seal of the clerk of the Superior Court of Buncombe County by deputy clerk Evelyn C. Boone show the following:

| "65-424, 65-425 | ) | CHARGE: RAPE, BURGLARY |
| STATE | ) | PLEA: NOT GUILTY |
| VS. | ) | ATTORNEYS: RUBEN DAILEY, ROBERT |
| ALBERT BOBBY CHILDS | ) | RIDDLE, THOMAS WHITE |

"In the cases of the *State of North Carolina v. Albert Bobby Childs*, cases Nos. 65-424 and 65-425, the jury retired and returned into open court with unanimous verdicts of GUILTY AS TO BOTH COUNTS OF THE INDICTMENT, with no recommendation of mercy. At request of Defense Counsel Dailey, the jury was individually polled as to their verdict as to each count of the indictment."

The written judgment of death in indictment No. 65-424, which is the rape case, signed by the presiding judge, as it appears in the record agreed upon by counsel for defendant and Robert S. Swain,

solicitor of the Nineteenth District, does not show what the defendant was convicted of. Minute Docket No. 33, page 507, of the Superior Court of Buncombe County, certified under the signature and seal of the clerk of the Superior Court of Buncombe County by deputy clerk Evelyn C. Boone, which appears in the second addendum to the record by the Attorney General, which we allowed, sets forth as its first paragraph the following: "The defendant Albert Bobby Childs, having been convicted of rape by verdict of the jury, duly returned at this session of the Superior Court of Buncombe County, North Carolina." The second paragraph of this judgment of death is identical with the judgment of death for rape set forth in the record.

The written judgment of death in indictment No. 65-425, which is the burglary case, signed by the presiding judge, as it appears in the record agreed upon by counsel for defendant and Robert S. Swain, solicitor of the Nineteenth District, does not show what the defendant was convicted of. Minute Docket No. 33, page 507, of the Superior Court of Buncombe County, certified under the signature and seal of the clerk of the Superior Court of Buncombe County by deputy clerk Evelyn C. Boone, which appears in the second addendum to the record by the Attorney General, which we allowed, sets forth as its first paragraph the following: "The defendant Albert Bobby Childs, having been convicted of burglary in the first degree by verdict of the jury, duly returned at this session of the Superior Court of Buncombe County, North Carolina." The second paragraph of this judgment of death is identical with the judgment of death for burglary set forth in the record.

First degree burglary is punishable with death, provided the jury when rendering its verdict in open court shall not recommend imprisonment for life in the State's prison; second degree burglary is punishable with imprisonment in the State's prison for life, or for a term of years, in the discretion of the court. G.S. 14-52.

Defendant has no exception to any part of the judge's charge. In the beginning of his charge, the judge stated this to the jury:

> "In this case, Members of the Jury, the defendant Albert Bobby Childs is being tried upon two Bills of Indictment. In the first Bill of Indictment, Case Number 65-424, the defendant is charged with the capital crime of rape, alleging that this occurred on May 27, 1965; the second Bill, Case Number 65-425, charges the capital crime of first degree burglary, charging that this occurred on the same day, May 27, 1965."

The court in its charge clearly defined burglary in the first degree. As to that he charged the jury that they could find one of the fol-

STATE *v.* CHILDS.

lowing verdicts as they found the facts to be under the instructions of law given to them by the court: Guilty of first degree burglary, and if they returned that verdict and nothing more, the punishment would be death, but they had the absolute right in their discretion if they returned a verdict of guilty of first degree burglary to recommend that the punishment shall be imprisonment for life in the State's prison, and if they so recommended the punishment would be life imprisonment, or guilty of a non-burglarious breaking and entry, or a verdict of not guilty. He did not charge on second degree burglary, for the reason there is no evidence in the record to show second degree burglary. Coming then to the record before us, and the verdict of the jury on the burglary indictment set forth in the minutes of the court and the judgment of death in the burglary case set forth in the minutes of the court, and interpreting the verdict with reference to the burglary indictment, the facts and evidence, and the charge of the court — a permissible method of interpretation — we think it is manifest that the verdict as set forth in the minutes of the court in respect to the burglary indictment, "Guilty as to both counts of the indictment, with no recommendation of mercy," means guilty of burglary in the first degree as charged in the burglary indictment, and this supports the judgment of death for burglary in the first degree. So clear is this that no challenge has been made to the sufficiency of the verdict in the burglary case to support the sentence of death upon his conviction of burglary in the first degree. The record as a whole reveals the clear intent of the jury. *S. v. Morris,* 215 N.C. 552, 2 S.E. 2d 554.

Stacy, C.J., said for the Court in *S. v. Morris, supra:*

"Coming then to the record before us and interpreting it with reference to the indictment, the facts in evidence, and the charge of the court — a permissible method of interpretation — we think it is manifest that the verdict, 'guilty as charged,' means 'guilty of burglary in the first degree' as charged in the bill of indictment. *S. v. Whitley,* 208 N.C. 661, 182 S.E. 338; *S. v. Bryant,* 180 N.C. 690, 104 S.E. 369; *S. v. Wiggins,* 171 N.C. 813, 89 S.E. 58; *S. v. Millican,* 158 N.C. 617, 74 S.E. 107. So clearly is this so that no challenge has been made to the sufficiency of the verdict. The record as a whole reveals the clear intent of the jury. *S. v. Kinsauls,* 126 N.C. 1095, 36 S.E. 31. Indeed, the facts essential to the establishment of the capital offense are not in dispute. *S. v. Foster, supra; S. v. Whit, supra.* They appear in part from the defendant's own evidence.

"Under the principle stated, and owing to the clearness of the evidence and the very definite and precise instruction of

the court as to the terms of the verdict, we find no difficulty in giving the instant verdict significance and upholding it as sufficiently determinative by reference to the indictment, the facts in evidence, and the charge of the court. *S. v. Wiggins, supra.*

"We deem it proper to say, however, that this method of interpreting a record is not a desirable one in a capital case where the pitfalls attendant upon such procedure are wholly disproportionate to the ease with which they may be avoided. *S. v. Murphy,* 157 N.C. 614, 72 S.E. 1075. In a matter of supreme importance, the jury should definitely and expressly say of what degree of crime they convict the prisoner, and the verdict should be recorded as rendered. There should be no room for doubt or mistake. *S. v. Matthews,* 191 N.C. 378, 131 S.E. 743."

In thus interpreting the verdict in the burglary case, we are on firmer ground than the Court was in interpreting the verdict in the *Morris* case, for the simple reason that there is no uncertainty in the verdict of guilty of rape, and that verdict fully supports the judgment of death in the rape case. If defendant is put to death by the State under the judgment of death in the rape case, he cannot again be put to death by the State under the judgment in the first degree burglary case, for the simple reason that no man can be put to death twice. Defendant does not challenge the sufficiency of the verdict in either the rape case or the burglary case to support the sentence of death in each case rendered separately.

We have carefully examined defendant's other numerous assignments of error. Such assignments of error merit no discussion. Many have no citation of authority to support the contention, and all are overruled. The charge of the court is full, accurate, and impartial. Nothing is shown in the record before us or in defendant's brief which would justify disturbing the verdicts and the judgments of death below.

No error.