STATE v. HARVEY HUNT AND PURCELL SMITH.

(Filed 19 May, 1943.)

**1. Criminal Law § 48c: Trial § 14—**

In a criminal prosecution objections to the evidence of State's witness must be made to questions at the time they are asked and to answers when given. Objections not so taken in apt time are waived.

**2. Criminal Law § 48c: Trial § 15—**

A motion to strike out testimony, to which no objection was aptly made, is addressed to the discretion of the trial judge, and his ruling, unless abuse of discretion appears, is not subject to review on appeal.

**3. Appeal and Error § 29—**

Exceptions referred to in defendants' brief as "formal exceptions" and as to which no argument is made and no authority cited are deemed abandoned. Rule 28 of Rules of Practice in the Supreme Court.

**4. Criminal Law § 53a: Trial § 29a—**

A charge is to be construed contextually and not by detaching clauses from their appropriate setting.

**5. Trial §§ 35, 36: Criminal Law § 53d—**

Where the court charged the jury that they might convict defendants of rape, or of the lesser degrees thereof, as they should find from the evidence, failing to state, as to one defendant, that they might also find him "not guilty," and the court thereafter recalled the jury and again clearly instructed the jury that they might find defendants "not guilty," in terms which could not have been misunderstood, no prejudicial error is made to appear.

APPEAL by defendants from *Burney, J.,* at November Term, 1942, of ROBESON.

Criminal prosecution upon indictment charging defendants with the capital offense of rape of one Eldora Hinson Eason.

Defendants pleaded not guilty.

While the transcript of the evidence offered by the State is long and in detail, the following is a narrative of what it tends to show:

On the afternoon of Tuesday, 27 October, 1942, around 5:30 o'clock, defendants Harvey Hunt and Purcell Smith, Indians, appeared at the place of business of Ball Cab Company in Fayetteville, North Carolina, and "wanted a cab" to take them to Rockfish Creek, which is located about four miles from Fayetteville on the Fayetteville-Lumberton highway. In a few minutes George Harrell, taxi driver operating a 1941 Plymouth, 4-door sedan, on which the name and telephone number of the Ball Cab Company appeared, left with them—defendant Hunt sitting in front seat with the driver, and defendant Smith in the back seat. When they approached the Rockfish Creek bridge defendants told the driver to "stop here," or "park here." And as he was in act of stopping Smith struck the driver in the side face with a blackjack or sandbag, and Hunt "stuck a gun" in his side. They took control of the car, robbed him of his pocketbook and contents, including about sixty-one dollars, and made him get in the back seat with his face down. Defendant Smith held him in that position at point of a gun while defendant Hunt drove the car. After passing through the town of St. Pauls and at a point about two miles below that town, Hunt turned the car into a dirt road that leads to and by the residence of Joseph Allen. The car was stopped beyond the Allen house, and Harrell was forced to get out and lie down. Defendant Smith got astride of him and, with gun in his stomach, held him there for about thirty minutes. In the meantime defendant Hunt turned the car around and drove away toward the highway. He was next seen when he overtook Mrs. Eldora Hinson Eason and her sister, Mrs. Elberta Hinson Capell, as they were walking on the highway from St. Pauls in direction of Lumberton and toward the home of their father, where they resided. He was driving a car on which name of Ball Cab Company appeared, and was coming from direction of St. Pauls toward entrance to this side road where he had left Harrell and defendant Smith. Mrs. Eason and Mrs. Capell had been to see another married sister, who was sick, and whose home was at St. Pauls. They left her home about 6:30 o'clock, "dusk dark," after having prepared supper for her and her family. Upon overtaking them defendant Hunt asked if they wanted a ride, to which they replied "No"—one saying, "We don't live very far, we will walk." Whereupon Hunt turned the car "cater-cornered across the white mark in the road," stopped opposite

them, jumped out, and, over their protests' and pleadings, and with pistol in hand, forced them around, and to enter the front seat of the car—Mrs. Eason in the middle, and Mrs. Capell next to the door. He then "slammed the door . . . ran around . . . got in on the other side . . . started up the car" and, with pistol still pointed at Mrs. Eason and her sister, who were protesting and begging to be let out, drove by their home and on to the said side road into which he turned and drove to and stopped within seventy-five yards of the Joseph Allen home, near where he had left Harrell and defendant Smith. When the car came and stopped there Smith "got off," released Harrell and told him "to back off," which he did and "took off," as he expressed his leaving there. Smith then came to the car and got in the back seat, and, as he did, Hunt handed to him the gun and said: "Here, hold this on them." At this moment Mrs. Capell jumped out of the car and ran to the home of Joseph Allen. Hunt chased her a part of the way and returned to the car, and while Smith sat in the back seat, holding gun against the back of Mrs. Eason, Hunt backed the car out to the highway, and, headed away from St. Pauls, drove some distance. He then turned off the hard surface into a side road and, after going some distance thereon, stopped the car. There, as she pleaded and begged them "not to bother" her, they forced her to get out of the car, take off her step-ins and lie down in the road. Whereupon, with Smith standing there with the pistol on her, Hunt had sexual intercourse with her against her will. And, immediately thereafter, in the face of her continued pleading and begging, Hunt held the pistol on her while Smith had sexual intercourse with her against her will. She says: "I begged and pleaded like a dog." Then they took her to a highway, put her out of the car and left. From there she made her way to a near-by filling station, and got some Indian boys there to take her home. She then told her mother what had happened to her.

In the meantime, Harrell having reported his experiences to people living near, and to officers, and Mrs. Capell having reported to Joseph Allen and others at his home, to her father, and to officers her experience and the carrying away of her sister, Mrs. Eason, a search was begun. As a result, both defendants were arrested that night, in connection with which the taxi was retaken. Defendants were placed in jail. Later Harrell identified them as the men who robbed him and took the taxi. Mrs. Eason and Mrs. Capell identified defendant Hunt as the man who forced them into the car on the highway. And Mrs. Eason identified both defendants as the men who carried her away and had sexual intercourse with her against her will, as detailed by her. Also, after defendants were put in jail, upon examination that night by a doctor, the

person of each defendant bore evidence from which State contends it may be inferred that each had had recent sexual intercourse.

Defendants offered no evidence.

The verdict of the jury is: "The defendants are guilty as charged."

The judgment, as to each defendant, is death by asphyxiation. Each defendant excepts thereto and appeals therefrom to Supreme Court, and assigns error.

*Attorney-General McMullan and Assistant Attorneys-General Patton and Rhodes for the State.*

*Ellis E. Page, J. E. Carpenter, and F. D. Hackett for defendants, appellants.*

WINBORNE, J. Careful consideration of the several assignments of error upon which defendants challenge the judgments below fails to indicate prejudicial error.

Exceptions 2 and 3 are taken to the denial by the court of motions of defendant Hunt (1) to strike out testimony of witness as to what appeared upon the person of this defendant when examined by a doctor on the night of the alleged crime, as set forth in the narrative herein, and (2) that court instruct the jury to disregard such testimony. In this connection it appears of record that these motions were not made until the State had rested its case, and that the ground assigned by the court for denying each motion is that no objection was made to the testimony at the time it was elicited from the witness. In these rulings we find no error. The competency of such evidence finds support in the case of *S. v. Cash,* 219 N. C., 818, 15 S. E. (2d), 277. But, if it be conceded that the testimony offered is incompetent, objection thereto should have been interposed to the question at the time it was asked as well as to the answer when given. An objection to testimony not taken in apt time is waived. *S. v. Merrick,* 172 N. C., 870, 90 S. E., 257. Afterward, a motion to strike out the testimony, to which no objection was aptly made, is addressed to the discretion of the trial judge, and his ruling in the exercise of such discretion, unless abuse of that discretion appears, is not subject to review on appeal. *S. v. Merrick, supra; S. v. Pitts,* 177 N. C., 543, 98 S. E., 767.

The exceptions 4 and 5 to refusal to grant motions for judgment as in case of nonsuit, C. S., 4643, as well as number 6, directed to a portion of the charge, are referred to in the brief for defendants as "formal exceptions." No argument is made and no authority is cited in support thereof. Hence, they are deemed abandoned. See Rule 28 of the Rules of Practice in the Supreme Court, 221 N. C., 562, at 563. *S. v. Howley,*

220 N. C., 113, 16 S. E. (2d), 705. However, the exceptions are without merit.

Exceptions 7, 12 and 16 are to portions of the charge in which the court instructed the jury that under an indictment for rape, and under the evidence and law in this case, one of five verdicts, rape, assault with intent to commit rape, assault with a deadly weapon, assault on a woman by a man over the age of eighteen years, and not guilty, may be returned as to each defendant. The objection thereto is that "the instructions . . . omit any reference to the rule of reasonable doubt." It appears of record, however, that the court fully, clearly and correctly instructed the jury as to the presumption of innocence with which defendants are clothed, and as to the burden being upon the State to prove the guilt of defendants beyond a reasonable doubt before they could be convicted of any offense. Thus, when the portions of the charge to which these exceptions relate are read in connection with that which precedes and with that which follows, there is no conflict, or room for misunderstanding, and no error is made to appear. *S. v. Utley, ante,* 39.

In closing the charge the court instructed the jury: "(You may retire, make up your verdict and let your verdict, gentlemen, reflect light, not heat, in the expression of truth and say by your verdict whether you find the defendant, Harvey Hunt, guilty of the crime of rape, or guilty of the crime of assault with intent to commit rape, or guilty of an assault with a deadly weapon, or guilty of an assault upon a female, he being a male person over 18 years of age; and say by your verdict whether you find the defendant, Purcell Smith, guilty of the crime of rape, or guilty of the crime of assault with intent to commit rape, or guilty of an assault with a deadly weapon, or guilty of an assault upon a female, he being a male person over 18 years of age, or not guilty.) Retire gentlemen and say how you find." Exception 15 is directed to the portion in parentheses— particularly in that among the verdicts which may be rendered as to defendant Hunt, that of "not guilty" is not included. However, the record shows that the jury was recalled to the courtroom and that then the court again instructed the jury "that you may find the defendant, Harvey Hunt, guilty of the crime of rape as charged, or you may acquit him of that, or find him guilty of an assault with intent to commit rape, or you may acquit him of that, or find him guilty of an assault with a deadly weapon or you may acquit him of that, and find him guilty of an assault upon a female, he being a male person over 18 years of age, or you may return a verdict of not guilty." And like instruction was given as to defendant Smith. Under these circumstances it is clear that the jury could not have understood that a verdict of "not guilty" could not be rendered. No prejudicial error is made to appear.

Several other excerpts from the charge are assigned as error. If any of these, isolated from the rest of the charge, be conceded to be subject to challenge, when they are read contextually with the portions of the charge which precede and which follow no error appears. *S. v. Utley, supra. Seratim* consideration of such assignments would only consume space without serving a useful purpose.

In fine, the State's evidence on which defendants were tried, as shown in the record on this appeal, manifests in them a spirit of ruthless indifference to the rights of others, and of pitiless atrociousness. The evidence as to every element of the crime alleged is sufficient to support a verdict of guilty as charged. The record shows that the case was fairly presented to the jury in a trial free from prejudicial error.

In the trial and judgments on the verdict there is

No error.