STATE OF NORTH CAROLINA v. JOHNNY THOMAS WILLIAMS

No. 494

(Filed 9 October 1968)

**1. Criminal Law § 146;   Appeal and Error § 1—   certiorari from Supreme Court to Court of Appeals — scope of review**

When the Supreme Court grants certiorari pursuant to G.S. 7A-31 to review a decision of the Court of Appeals, only the decision of that Court is presented for review, and inquiry is restricted to rulings of the Court of Appeals assigned as error in the petition for certiorari and preserved by arguments or by citation of authorities in the brief, except in those instances in which the Supreme Court elects to exercise its general power of supervision of courts inferior to it.

**2. Criminal Law § 157;   Appeal and Error § 40—   necessary parts of record**

Elementary consideration for efficient and just administration of the legal processes involved in the adjudication of a lawsuit, criminal or civil, requires that an appellate court have in the record before it a complete account of the action by the trial court of which the appellant complains.

**3. Criminal Law § 158—   conclusiveness and effect of record**

An appellate court is not required to, and should not, assume error by the trial judge when none appears on the record before the appellate court.

**4. Criminal Law § 162—   necessity for objection — motion to strike**

Nothing else appearing, the admission of incompetent evidence is not ground for a new trial where there was no objection at the time the evidence was offered; where, however, the incompetency of the testimony elicited by a proper question does not become apparent until the witness answers or until subsequent evidence is introduced, the opposing party may then make a motion to strike the incompetent testimony.

**5. Criminal Law § 162—   motion to strike — consideration of evidence**

Ruling of trial court upon defendant's motion to strike testimony re-

lating to the in-court identification of the defendant must be judged in the light of matters in the record at the time the motion was made, there having been no renewal of it at a later stage of the trial.

**6. Criminal Law § 66— evidence — in-court identification of defendant — motion to strike**

Trial court did not err in denying defendant's motion to strike evidence of the State relating to the in-court identification of the defendant, such evidence being admitted without objection, where the testimony before the court at the time the motion was made was to the effect that the prosecuting witness had previously identified the defendant as the perpetrator of the robbery in a police lineup of approximately eight people at the jail sixteen days after the crime, such testimony not being incompetent *per se.*

**7. Criminal Law § 162— motion to strike — disallowance of broadside motion**

Even though subsequently admitted evidence discloses the incompetency of earlier testimony which was apparently competent when admitted, a motion to strike the entire testimony will not be allowed where some of that testimony remains competent; in such case, the moving party must designate the incompetent evidence to be stricken from the record.

**8. Criminal Law § 169— waiver of objection — admission of like evidence for impeachment**

The rule that an objection to the admission of testimony is waived when like evidence is thereafter admitted without objection or is subsequently offered by the objecting party himself is not applicable where the objecting party offers the evidence for the purpose of impeaching the credibility or establishing the incompetency of the testimony in question.

**9. Constitutional Law § 32— waiver of right to counsel**

One may waive his constitutional right to counsel provided he does so freely, voluntarily and with full understanding that he has such right.

**10. Constitutional Law § 32— waiver of counsel — effect of failure to make request**

The right to have counsel appointed and to consult with him prior to participation in a police identification lineup is not to be deemed waived merely because of defendant's failure to request such appointment or consultation; however, it is not required that the waiver be in writing.

**11. Criminal Law § 32— test of waiver of counsel**

Whether a waiver of right to counsel be oral or written, the crucial question is whether the accused clearly understood that he had the right and voluntarily elected to waive it.

**12. Criminal Law § 66; Constitutional Law § 32— evidence — lineup identification of defendant — preservation of constitutional rights**

Evidence that defendant was identified at a police identification lineup by the prosecuting witness as the perpetrator of the robbery is competent and is properly admissible where (1) the uncontradicted evidence is to the effect that defendant was clearly told of his right to court-appointed

counsel at the lineup and that defendant freely and understandingly consented to stand in the lineup without counsel, and where (2) there was no evidence to suggest that the lineup was inherently unfair to defendant or violated any of defendant's constitutional rights.

**13. Criminal Law §§ 66, 84— evidence obtained unlawfully — effect of unconstitutional lineup — independent identification of defendant**

Even if police identification lineup had deprived defendant of his constitutional rights, the in-court identification of defendant would not be inadmissible in evidence when such identification was an independent identification based upon what the witness observed at the time of the robbery.

**14. Criminal Law § 66— lineup identification of defendant — failure to make findings of fact**

Failure of trial judge to hold voir dire hearing and to make specific findings of fact concerning the conduct of a police identification lineup and defendant's waiver of counsel thereat, while not approved, will be deemed harmless error in this robbery prosecution when the evidence is clear and uncontradictory that (1) the defendant waived his right to counsel at the lineup, (2) the lineup was conducted fairly and without prejudice to him, and (3) the in-court identification of defendant was not fruit of the lineup but had its independent origin in the witness' observation of the crime itself.

SHARP, J., concurs in result.

ON certiorari to the Court of Appeals.

Upon an indictment, proper in form, charging him with robbery with the use of firearms, the defendant was found guilty as charged and was sentenced by the Superior Court of Wake County to confinement in the State Prison for a term of 15 to 20 years. On appeal, the Court of Appeals found no error. *State v. Williams,* 1 N.C.App. 127. The defendant being found indigent, his present counsel was duly appointed by the superior court to represent him at the trial and did so, the appointment and representation being continued for appellate review proceedings.

At the trial in the superior court on 30 October 1967, the evidence for the State consisted of the testimony of Allen Bruce Wood and Police Officer M. L. Stephenson. The testimony of Wood on direct examination, summarized except as indicated, was as follows:

On 18 August 1967, about 10:30 p.m., the defendant entered the filling station operated by Wood, no other person being present, purchased a bottled drink, "stood around for a while" and then drew a pistol, stuck it in Wood's ribs and said he wanted everything in the cash register and if Wood "tried anything" he would fill Wood "full of holes." After taking the contents of the cash register, the defendant ordered Wood to go

into the rest room and remain there for five or ten minutes, which Wood did. Thereupon, Wood came out and called the police, the defendant having departed.

After the defendant's entry into the station, some children came in and purchased some cookies but left before the defendant drew the pistol. The defendant remained in the filling station approximately 15 or 20 minutes.

Wood next saw the defendant on 3 September 1967, when, in response to a call from the police, he went to the jail and saw the defendant in a lineup consisting of approximately eight people, Officer Stephenson being present.

Before beginning his cross-examination of Wood, defendant's council made a motion "to strike the testimony of this witness," the motion being directed to the entire testimony and not to any specific portion of it. The court excused the jury. The record shows "discussion off record" in the absence of the jury, the nature of the discussion not appearing. Thereupon, the court denied the motion. The defendant excepted.

On cross-examination, Wood testified as follows, summarized except as indicated:

He first saw the defendant when the defendant was coming in at the door of the station. He had never seen the defendant before. At the time of the robbery the defendant had a moustache. At the time of the trial [or of the lineup — the record not being clear on this point] he was clean shaven. At the time of the robbery the defendant had on a yellow shirt and dark pants. The shirt he wore had various designs of different shapes upon it. The defendant held the gun in his right hand and stuck it in Wood's ribs while standing on Wood's right side. Wood had three or four minutes to observe the defendant's physical appearance when the defendant conducted Wood to the rest room.

Officer Stephenson testified on direct examination as follows, summarized except as indicated:

He is a detective sergeant in the Raleigh Police Department. He arrested the defendant 2 September 1967 on another charge. On the following day he placed the defendant in a lineup at the jail with five other Negro males and requested Wood to view the men in the lineup. He had not told Wood which of the men in the lineup was suspected of having perpetrated the robbery now in question. While in the lineup, the defendant wore a blue shirt as did at least one of the others, the remainder of the men in the

lineup wearing clothing of different colors. Each man in the lineup held a card on which there was a number. Wood was instructed to go down the line, look at the men in it and, if he saw the person in the lineup who had robbed him, to write that person's number on a sheet of paper and exhibit it to the officer. Wood so identified the defendant.

Prior to requesting Wood to view the men in the lineup, Stephenson advised the defendant as follows: "No. 1. You have the right to remain silent. No. 2. Anything you say can and will be used against you in a court of law. No. 3. You have the right to talk to a lawyer and have him present with you while you are being questioned. No. 4. If you cannot afford to hire a lawyer one will be appointed to represented [sic] you. No. 5. Do you understand each of these rights I have explain [sic] to you? No. 6. Having these in mind do you wish to talk to us now? And I further advised Johnny that he had the right to see an attorney before he was placed in the line up. * * * The defendant did not want any counsel, he stated he had not committed any crime and he did not mine [sic] standing in a line up."

On cross-examination, Officer Stephenson testified that he did not obtain from the defendant a written waiver of counsel. At the time of the lineup the defendant was not represented by counsel. He did not request one.

The defendant took the stand in his own behalf and denied his guilt. He introduced evidence which, if true, was sufficient to establish an alibi. With reference to the lineup, he testified that there were six persons in it and that Wood, without looking at anyone else, walked straight to the defendant.

*Attorney General Bruton, Deputy Attorney General McGalliard and Deputy Attorney General Bullock for the State.*

*Ralph McDonald for defendant appellant.*

Lake, J.

The only question presented for our consideration is: Did the Court of Appeals err in its conclusion that there was no error in the denial by the trial judge of the defendant's motion to strike the entire testimony of the witness Wood?

In his appeal to the Court of Appeals the defendant assigned as error this ruling of the trial judge, the denial of his motion for

judgment as of nonsuit, and a specified portion of the charge to the jury. The Court of Appeals concluded there was no merit in any of these assignments of error. Neither in his petition to this Court for certiorari nor in his brief filed in this Court did the defendant refer to the denial of his motion for judgment as of nonsuit or to the alleged error in the charge to the jury. Consequently, these matters are not before us and are deemed abandoned by the defendant.

[1] When this Court, after a decision of a cause by the Court of Appeals and pursuant to the petition of a party thereto as authorized by G.S. 7A-31, grants certiorari to review the decision of the Court of Appeals, only the decision of that Court is before us for review. We inquire into proceedings in the trial court solely to determine the correctness of the decision of the Court of Appeals. Our inquiry is restricted to rulings of the Court of Appeals which are assigned as error in the petition for certiorari and which are preserved by arguments or the citation of authorities with reference thereto in the brief filed by the petitioner in this Court, except in those instances in which we elect to exercise our general power of supervision of courts inferior to this Court. Our review of a decision by the Court of Appeals upon an appeal from it to us as a matter of right, pursuant to G.S. 7A-30, which means of review might have been pursued by the defendant in this action, is similarly limited.

The complete transcript of the proceedings in the trial court, contained in the record before the Court of Appeals and before us, shows that the defendant did not interpose a single objection to any question propounded to the witness Wood or move to strike any specific portion of his testimony. At the conclusion of the direct examination of this witness, his testimony thereon being summarized above in our statement of facts, the defendant made a motion to strike his entire testimony. Thereupon the trial judge sent the jury from the courtroom and in the absence of the jury there was "discussion off record," the nature of which is not set forth in any manner in the record. The motion to strike was denied. The jury then returned to the courtroom.

[2, 3] Elementary consideration for efficient and just administration of the legal processes involved in the adjudication of a lawsuit, criminal or civil, requires that an appellate court have in the record before it a complete account of the action by the trial court of which the appellant complains. An appellate court is not required to, and should not, assume error by the trial judge when none appears on the record before the appellate court.

As soon as counsel made his motion to strike the testimony, the

trial judge sent the jury from the courtroom and heard counsel upon his motion. There is nothing whatever in the record to suggest that the trial judge did not hear and consider everything which counsel sought to present for his consideration.

So far as appears in the record, at the time the trial judge denied the motion to strike, which motion was never renewed, all of the evidence was to the effect that approximately two months prior to the trial a robbery had been committed, that the only witness who had then testified was the victim of the robbery, that he identified the defendant in the courtroom as the perpetrator of it and that he had previously identified the defendant as such perpetrator in a lineup of approximately eight people at the jail sixteen days after the robbery. According to the record, there was then before the trial judge no evidence, or even contention, that the lineup was unfairly conducted, or that counsel or friends of the defendant were not present or that there was any other defect in the lineup procedure. Upon these facts, should a new trial be granted for the reason that the trial judge denied the motion to strike the entire testimony of the witness Wood?

We turn first to the law of this State.

[4] Nothing else appearing, the admission of incompetent evidence is not ground for a new trial where there was no objection at the time the evidence was offered. *State v. McKethan,* 269 N.C. 81, 152 S.E. 2d 341; *State v. Camp,* 266 N.C. 626, 146 S.E. 2d 643; *Lambros v. Zrakas,* 234 N.C. 287, 66 S.E. 2d 895; *State v. Fuqua,* 234 N.C. 168, 66 S.E. 2d 667; *State v. Hunt,* 223 N.C. 173, 25 S.E. 2d 598; Stansbury, North Carolina Evidence 2d ed., § 27; Wigmore on Evidence, 3d ed., § 18. Where, however, a proper question is propounded to a witness and the incompetency of the testimony elicited does not become apparent until the witness answers or until subsequent evidence is introduced, the opposing party may then make a motion to strike the testimony then shown to be incompetent. *Moore v. Insurance Co.,* 266 N.C. 440, 146 S.E. 2d 492; *Gatlin v. Parsons,* 257 N.C. 469, 126 S.E. 2d 51; *Gibson v. Whitton,* 239 N.C. 11, 79 S.E. 2d 196; *Ziglar v. Ziglar,* 226 N.C. 102, 36 S.E. 2d 657; *Hodges v. Wilson,* 165 N.C. 323, 81 S.E. 340. If, therefore, the in-court identification of the defendant by Wood was competent on its face when such testimony was given and its incompetency became apparent only when the subsequent testimony by Wood relating to his observation of the defendant in the lineup at the jail was given, it was then not too late for the defendant to move to strike the testimony relating to the in-court identification.

**[5, 6]** However, the ruling of the trial court upon that motion must be judged in the light of matters in the record at the time the motion was made, there having been no renewal of it at a later stage of the trial. *State v. Bishop,* 272 N.C. 283, 158 S.E. 2d 511. In the present case, the testimony of Wood with reference to the in-court identification of the defendant as the man who robbed him was competent per se. At the time of the motion to strike, the only evidence in the record concerning Wood's observation of the defendant at the jail lineup was that he had so observed the defendant sixteen days after the robbery at the jail in a lineup composed of eight people, two police officers being present.

Evidence that the victim of a crime has identified the defendant as the perpetrator of it at a police lineup is not incompetent per se. *State v. McKissisk,* 271 N.C. 500, 157 S.E. 2d 112. It follows, necessarily, that such evidence alone does not make incompetent an in-court identification of the defendant as the perpetrator of the crime and, consequently, does not require or permit the striking of the previously admitted in-court identification testimony.

**[7]** Furthermore, it is the well settled rule in this jurisdiction that even though subsequently admitted evidence discloses the incompetency of earlier testimony, apparently competent when admitted, a motion to strike the entire testimony of the witness in question will not be allowed where some of that testimony remains competent, notwithstanding the subsequent development. *State v. Tyson,* 242 N.C. 574, 89 S.E. 2d 138; *Nance v. Telegraph Co.,* 177 N.C. 313, 98 S.E. 838. In such case, the moving party must designate the incompetent evidence to be stricken from the record. This the defendant did not do, so far as the record shows. The trial judge is under no duty to go back and study the earlier testimony in order to separate the competent from the incompetent portions of it.

The defendant was clearly not entitled to have stricken testimony by Wood to the effect that the crime of robbery had been committed against him by someone. For this reason, if for no other, his broadside motion to strike the entire testimony of Wood was properly overruled. He made no other motion and, in this Court, relies on no other ground for the granting of a new trial. In the dead silence of the record as to what transpired in the "discussion off record," which occurred in the absence of the jury following his motion to strike the testimony of Wood, we would not be justified in granting a new trial on the basis of speculation as to what may have been presented to the trial judge or speculation as to what his

rulings and "off the record" findings were or were not prior to and leading to his overruling of the motion.

[8]    It is also the well established rule in the courts of this State that an objection, even though seasonably made upon a sound ground, is waived when like evidence is thereafter admitted without objection, and especially so where like evidence is subsequently offered by the objecting party himself. *Adams v. Godwin,* 254 N.C. 632, 119 S.E. 2d 484; *Shelton v. R. R.,* 193 N.C. 670, 139 S.E. 232; *Willis v. New Bern,* 191 N.C. 507, 132 S.E. 286. The Court of Appeals relied, in part, upon this rule in support of its decision. We do not, however, rest our decision upon that ground since one does not waive an objection or a motion to strike, otherwise sound and seasonably made, by offering evidence for the purpose of impeaching the credibility or establishing the incompetency of the testimony in question. *State v. Aldridge,* 254 N.C. 297, 118 S.E. 2d 766; Stansbury, North Carolina Evidence 2d ed., § 30.

The defendant's cross-examination of the witness Wood with reference to his observation of the defendant at the jail lineup, his failure to object to the testimony of Officer Stephenson and his own testimony as to the lineup, all appear to have been for the purpose of impeaching the credibility of the lineup identification by Wood or for the purpose of establishing the alleged incompetency of Wood's lineup and in-court identification of the defendant. Regardless of their ineffectiveness for those purposes, we think the defendant was entitled to offer such testimony without thereby losing the benefit of his earlier motion to strike, assuming for the moment that there was merit in that motion. However, the denial of the motion to strike the testimony of Wood was in accord with the law of this State for the reasons heretofore mentioned.

Furthermore, under the law of this State, as distinguished from the Constitution of the United States, there was no error in denying the motion to strike, even if the matter of identification of the defendant with the robber be deemed so inextricably woven through the testimony of Wood as to affect the whole of it, and even though it be assumed that the entire testimony in the record concerning the jail lineup was placed before the trial judge in the course of the "discussion off record" immediately preceding the denial of the motion to strike.

In *State v. McKissick, supra,* the facts were strikingly similar to those in the present case. There the defendant was convicted of the robbery of an operator of a service station. The victim identified the defendant in court as the perpetrator of the robbery. The State's

evidence showed that between the robbery and the trial the victim had observed the defendant in a police lineup composed of six persons and had there identified him as the perpetrator of the robbery. The defendant was not represented by counsel at the police lineup. We affirmed the conviction, being then free from the compulsion of *United States v. Wade*, 388 U.S. 218, 18 L. ed. 2d 1149 87 S. Ct. 1926, the conviction having occurred prior to the date of that decision by the Supreme Court of the United States. See also *State v. Covington*, 273 N.C. 690, 161 S.E. 2d 140.

*State v. Wright*, 274 N.C. 84, 161 S.E. 2d 581, was not decided by this Court on the basis of the law of this State. The ground for our decision in that case was that the Sixth and Fourteenth Amendments to the Constitution of the United States, as interpreted by the United States Supreme Court in *United States v. Wade, supra,* and companion cases, made incompetent an in-court identification of the defendant as the perpetrator of a rape, the victim having, in the meantime, identified him as her assailant when she observed him in police custody. Furthermore, the *Wright* case is easily distinguishable from the present case. There, the victim of the crime first observed the defendant at a police lineup and was unable to identify him as her assailant. He was then taken out of the lineup, required to put on clothing similar to that worn by the assailant at the time of the crime and required to speak words uttered at that time by the assailant. The defendant was the only person so exhibited to the victim at this second stage of the out-of-court confrontation. She then identified him, not by his appearance but by his voice and manner of walking. There was nothing to indicate that at the time of her in-court identification she heard the defendant speak or observed him walking. Thus, it was clear from the record that her in-court identification was, in reality, an identification of the defendant as the man she had previously identified in the police confrontation, not as the man who had raped her. On these facts, we held that *United States v. Wade, supra,* and its companion cases, required the granting of a new trial.

We, therefore, now turn to the question of whether the Sixth and Fourteenth Amendments to the United States Constitution, as distinguished from the law of this State require the granting of the defendant's motion to strike the testimony of the witness Wood.

In *United States v. Wade, supra,* and the companion case of *Gilbert v. California*, 388 U.S. 263, 18 L. ed. 2d 1178, 87 S. Ct. 1951, the Supreme Court of the United States set aside convictions, pending further hearings by the respective trial courts. Mr. Justice Brennan,

who wrote what appears to be the opinion of the Court, although no other Justice concurred fully therein, stated the question for decision in the *Wade* case as follows:

"The question here is whether courtroom identifications of an accused at trial are to be excluded from evidence because the accused was exhibited to the witnesses before trial at a post-indictment lineup conducted for identification purposes without notice to and in the absence of the accused's appointed counsel."

The decision was that the Sixth Amendment right to counsel at "critical" stages of a criminal proceeding includes the right to counsel at a police lineup and that a subsequent in-court identification by the victim of a robbery must be stricken unless the government establishes "by clear and convincing evidence that the in-court identifications were based upon observation of the suspect other than the lineup identification." *Gilbert v. California, supra,* decided the same day, held that the Fourteenth Amendment imposes the same limitation upon efforts by state courts to administer justice.

In *State v. McKissick, supra,* this Court expressed its inability to concur in the rule of the *Wade* and *Gilbert* cases as a correct interpretation of the Sixth and Fourteenth Amendments to the United States Constitution. We continue to adhere to the view we there expressed. It is not necessary for us to state again our reasons for believing that in the *Wade* and *Gilbert* cases the Supreme Court of the United States made a grievous error in the construction of these provisions of the Constitution. That it did so was demonstrated with eloquence and compelling logic in the opinions of the four dissenting Justices. Perhaps, however, the most convincing demonstration was supplied by the majority themselves in the third case decided on that day, *Stovall v. Denno,* 388 U.S. 293, 18 L. ed. 2d 1199, 87 S. Ct. 1967, in which Mr. Justice Brennan, again writing the opinion of the Court, said:

"Today's rulings were not foreshadowed in our cases; no court announced such a requirement until Wade was decided by the Court of Appeals for the Fifth Circuit, 358 F 2d 557. The overwhelming majority of American courts have always treated the evidence question not as one of admissibility but as one of credibility for the jury. * * * Law enforcement authorities fairly relied on this virtually unanimous weight of authority, now no longer valid, in conducting pretrial confrontations in the absence of counsel. It is, therefore, very clear that retroactive application of Wade and Gilbert 'would seriously disrupt the administration of our criminal laws.' * * * We conclude,

therefore, that the Wade and Gilbert rules should not be made retroactive."

In view of the unnumbered thousands of police lineups which had been conducted throughout the nation prior to the *Wade* and *Gilbert* decisions, and the "virtually unanimous weight of authority" holding them constitutional, it would seem that any court would have hesitated to announce a contrary rule unless that court within itself, at least, had no doubt about the matter. Four Justices dissented from the *Wade* and *Gilbert* decisions. Four joined in the decisions on the basis of conviction as to the merits. Mr. Justice Clark, who cast the deciding vote in favor of the decisions, stated expressly that he did so solely because he felt bound by the earlier decision in *Miranda v. Arizona,* 384 U.S. 436, 16 L. ed. 2d 694, 86 S. Ct. 1602, *from which earlier decision he, himself, had dissented.* Upon so slender a basis the Constitution of this country has been drastically altered. Mr. Justice Clark has since retired and been succeeded by Mr. Justice Marshall, whose views upon the soundness of the *Wade* and *Gilbert* decisions do not appear in the reports.

Be that as it may, the decision of the United States Supreme Court, however erroneous we may believe it to be, is binding upon us as an authoritative construction of the Constitution of the United States. Though we look hopefully for the dawn of a new day, we must, therefore, decide the present case as if we, ourselves, fully concurred in the construction placed upon the Sixth and Fourteenth Amendments by the *Wade* and *Gilbert* cases. We are not, however, required to extend those cases to situations not fairly within the scope of the rule there announced.

[9-11]   One may waive his constitutional right to counsel provided he does so freely, voluntarily and with full understanding that he has such right. See: *United States v. Wade, supra; Miranda v. Arizona, supra; Moore v. Michigan,* 355 U.S. 155, 2 L. ed. 2d 167, 78 S. Ct. 191; *State v. Wright, supra.* The right to have counsel appointed and to consult with him prior to participation in a police lineup is not to be deemed waived merely because of a failure by the defendant to request such appointment or consultation. *Burgett v. Texas,* 389 U.S. 109, 19 L. ed. 2d 319, 88 S. Ct. 258; *Swenson v. Bosler,* 386 U.S. 258, 18 L. ed. 2d 33, 87 S. Ct. 996. However, it is not required that the waiver be in writing. See *State v. Wright, supra; State v. McNeil,* 263 N.C. 260, 139 S.E. 2d 667. Obviously, it is the part of wisdom for the officer in charge of the stage of the proceeding at which there is a right to counsel to reduce to writing a waiver of such right by the accused, but the crucial question, whether the

waiver be oral or written, is whether the accused clearly understood that he had the right and voluntarily elected to waive it.

[12]    In the instant case, the lineup was arranged and supervised by Detective Sergeant Stephenson of the Raleigh Police Department. As shown above, in the statement of facts, Sergeant Stephenson advised the defendant in detail concerning his rights prior to requesting Wood to view the lineup. Specifically, the defendant was told that if he could not afford to employ counsel one would be appointed to represent him and that he had the right to see an attorney before he was placed in the lineup. The two statements, made in immediate succession, must be construed together and, so considered, could mean only that if the defendant wished to have the advice of counsel at the lineup and could not afford to employ one, a lawyer would be appointed for that purpose. There is not the slightest indication in the entire record that the defendant could not or did not understand this clear and explicit statement to him by the officer. The officer then testified that the defendant did not want any counsel and stated to the officer that he, the defendant, had not committed any crime and did not object to being in a lineup.

After Sergeant Stephenson had so testified, the defendant took the stand and testified in his own behalf. On direct examination, he did not once mention the police lineup. On cross-examination, he denied that he had ever seen Wood prior to the time Wood picked him out of the lineup and identified him as the perpetrator of the robbery. Thereupon, on further cross-examination, the defendant testified that he was then standing in a lineup of six people and that Wood walked straight to him and picked him out of the group. Not another word did the defendant say with reference to the lineup. He never mentioned Stephenson's testimony concerning the defendant's waiver of his right to counsel at the lineup. Consequently, taking the entire record into consideration, there is not one word of evidence tending to contradict the testimony of Sergeant Stephenson that the defendant was clearly told of his right to court-appointed counsel at the lineup and that he consented to stand in the lineup without counsel.

Nothing whatever in this record suggests an unfair lineup or any effort or arrangement calculated to suggest to Wood that the defendant was the member of the group who was suspected by the police of being the perpetrator of the robbery. All six men in the lineup were Negroes. There is nothing to indicate any notable discrepancy in their ages, sizes or other physical characteristics. It is further to be noted that at the lineup the defendant wore different colored cloth-

ing from that worn by the robber at the time of the offense. The lineup occurred only sixteen days after the crime was committed. The identification at the lineup was prompt and unhesitating. We find nothing in this record which would support a finding that the lineup violated any constitutional right of the defendant. Consequently, we hold that the evidence of the identification of the defendant by Wood at the lineup was competent.

[13]    Giving the rule of *United States v. Wade, supra,* and *Gilbert v. California, supra,* its full effect, as we are required to do and as we do, even an unconstitutional lineup does not necessarily make an in-court identification inadmissible in evidence. The opinion of the Court in *United States v. Wade, supra,* states:

> "We think it follows that the proper test to be applied in these situations is that quoted in *Wong Sun v. United States,* 371 U.S. 471, 488, 9 L ed 2d 441, 455, 84 S Ct 407, ' "[W]hether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." ' * * * Application of this test in the present context requires consideration of various factors; for example, the prior opportunity to observe the alleged criminal act, the existence of any discrepancy between any pre-lineup description and the defendant's actual description, any identification prior to lineup of another person, the identification by picture of the defendant prior to the lineup, failure to identify the defendant on a prior occasion, and the lapse of time between the alleged act and the lineup identification. It is also relevant to consider those facts which, despite the absence of counsel, are disclosed concerning the conduct of the lineup."

Here, in contrast to *State v. Wright, supra,* the offense was committed not in a dimly lighted room but in a service station open for business; the victim of the crime was not aroused from sleep but was the service station attendant who had sold a bottled drink to the robber and had observed him standing in the station for a substantial period of time prior to the robbery, and who also observed him for "three or four minutes" after the robbery was commenced by the sticking of a pistol into the victim's ribs. Only ten weeks elapsed between the robbery and the in-court identification. There is nothing whatever in the record to contradict or cast doubt upon any of this evidence as to the conditions under which Wood observed the robber at the time of the crime. To use again language from the opinion of

the Court in *United States v. Wade, supra,* the State has established "by clear and convincing evidence that the in-court identification was based upon observation of the suspect other than the lineup identification."

The in-court identification of the defendant by Wood was, therefore, not "fruit of a poisonous tree." First, the lineup was not "a poisonous tree." Second, the in-court identification was not fruit of the lineup, but was an independent identification based upon what the witness observed at the time of the robbery. See *State v. Covington, supra.*

[14] It is regrettable that when the jury was sent from the courtroom upon the making of the motion to strike, the presiding judge did not cause the full hearing on voir dire to be placed in the record and did not put into the record his specific findings of fact concerning the conduct of the lineup and the defendant's waiver of counsel thereat. This should have been done. See: *State v. Gray,* 268 N.C. 69, 150 S.E. 2d 1; *Johnson v. Zerbst,* 304 U.S. 458, 82 L. ed. 1461, 58 S. Ct. 1019. We have, however, given to the defendant the benefit of every reasonable assumption in his favor by searching through the entire record of the trial for every particle of information concerning the events relating to the lineup just as if all of it had been presented on the voir dire.

If there were any conflicts in the evidence or any suggestion whatever in the entire record that the lineup was unfairly conducted or that the defendant did not waive his right to counsel thereat, as the State's evidence clearly shows he did, we would reverse the conviction and grant a new trial because of the failure of the trial judge to find the crucial facts. Where, however, as here, there is no conflict in the evidence, it is abundantly clear that the defendant did waive his right to counsel at the lineup, it is equally clear that the lineup was conducted fairly and without prejudice to him, and perfectly obvious that the in-court identification was not fruit of the lineup but had its independent origin in the witness' observation of the crime itself, this failure of the trial court to insert such findings into the record must be deemed harmless error. *State v. Bell,* 270 N.C. 25, 153 S.E. 2d 741; *State v. Bishop, supra.* The record would not support findings to the contrary. The record shows that the defendant has had a fair trial and a contrary result could not reasonably be expected upon a retrial of the case even if all evidence of the identification of the defendant at the lineup were withheld from the jury.

No error.

SHARP, J., concurs in result.