State v. Blalock

STATE OF NORTH CAROLINA v. JAMES JACKSON BLALOCK AND MERIL LANE ANDREWS

No. 7010SC235

(Filed 5 August 1970)

1. **Criminal Law § 99— rape prosecution — questions asked by court — expression of opinion**

    In this prosecution for rape, questions which the trial judge asked some of the witnesses were for the purpose of clarification and did not constitute an expression of opinion or tend to impeach the testimony of the witnesses.

2. **Criminal Law § 99— threat by court to issue bench warrants against defense witnesses — prejudice to defendants**

    In this rape prosecution, defendants were not prejudiced when, after a defense witness testified that each of the men present at the prosecutrix' house on the night in question had intercourse with prosecutrix with her consent, the trial court, in the absence of the jury but in the presence of defense witnesses, threatened to issue bench warrants for the arrest of any witness who testified he had participated in the crime of aiding and abetting in prostitution, where the court's remarks obviously had no adverse effect on subsequent defense witnesses who thereafter gave similar testimony.

3. **Criminal Law § 162— necessity for objections**

    Unless an objection is made at the proper time, it is waived.

4. **Criminal Law § 162— objection to specific question — apt time**

    In case of a specific question, objection should be made as soon as the question is asked and before the witness has had time to answer.

5. **Criminal Law § 162— failure to object — waiver of objection**

    In this rape prosecution, defendants waived objection to solicitor's question on cross-examination as to whether a defense witness would

State v. Blalock

be willing to take a lie detector test regarding his testimony, where they failed to object in apt time the first three times the question was asked.

6. **Criminal Law § 166— abandonment of assignment of error**

Assignment of error not brought forward and argued in the brief is deemed abandoned.

7. **Rape and Allied Offenses § 6— instructions defining assault**

In this rape prosecution, the trial court did not commit prejudicial error in defining assault when the charge is considered contextually.

8. **Criminal Law §§ 113, 118— inadvertence in stating contentions or recapitulating evidence — necessity for objection**

Generally, an inadvertence in stating the contentions of the parties or in recapitulating the evidence must be called to the trial court's attention in time for correction.

9. **Criminal Law §§ 118, 168— misstatement of contentions — harmless error**

In this rape prosecution, misstatements of defendants' contentions, if any, related to subordinate features of the case and did not prejudice defendants.

10. **Rape and Allied Offenses § 6; Criminal Law § 114— use of words "assault" and "rape" in charge — expression of opinion**

In this rape prosecution, the trial court did not lead the jury to assume that the facts in controversy had been established by use of the words "assault" and "rape" or "raping" in referring to the charges against defendants.

APPEAL from *Carr, J.,* 2 September 1969 Regular Criminal Session, WAKE County Superior Court.

The defendants in this case, Meril Lane Andrews (Andrews) and James Jackson Blalock (Blalock), were indicted by the Grand Jury at the August 1969 Regular Criminal Session of Wake County Superior Court in two bills of indictment each in which they were charged with the rape of Beverly Suzanne Beam and Patricia Ann Hinton. Upon arraignment each defendant entered a plea of not guilty to each charge against him and upon motion of the solicitor and with the consent of each of the defendants the four cases were consolidated for trial.

The evidence at the trial tended to show the facts to be as follows: On the night of 24 July 1969 Patricia Ann Hinton left her house at 702 Edmunds Street in the City of Raleigh to buy a bottle of liquor. Finding the A.B.C. stores all closed she went to a house on Linden Avenue where she purchased some

liquor from the defendant Andrews. When she returned to her home she was visited by some neighbors. Following their visit she took a drink and talked on the telephone until about 10:30 p.m. She then lay down on her sofa and took a nap. She was awakened by a knock on her door and when she opened it the defendant Andrews, along with Thomas Moody, entered the house and were followed by several other people. Andrews fixed a drink and told her to have a drink with him. About this time Thomas Moody asked her to go with him and she went with him into the bedroom where they had sexual intercourse. She testified that after Moody had intercourse with her the defendant Blalock came "busting" through the door, threw her down on the bed and jumped on top of her, and made her engage in some unnatural sexual acts with him. Andrews came into the room and while Blalock sat on her, he had intercourse with her after which Blalock had intercourse with her also, all against her will. During the time this was occurring, Blalock burned her with a cigarette in several places on her body. After Blalock and Andrews finished with her she dressed and went down the hall to call the police. She testified that she heard someone yell that she was going to call the police and that just as she got the receiver in her hands Blalock came running out of the other bedroom, grabbed the receiver from her and jerked the phone off the wall. Then he threw her against the side of the wall and called her names while hitting her on the arm with the receiver. When she got free from Blalock she ran out the front door and went to a neighbor's house to call the police. The neighbor, however, was not home so she returned to her own house where she found that the crowd had left. She went in, locked the door and did not remember anything until the police came the next morning. Early the next morning two policemen came to her door and asked her what had been going on. She at first denied that anything had been going on there but when informed by the policeman that another girl had claimed to have been raped there the previous night, she told the officers that she had been raped also. She was then taken to the Raleigh Municipal Building where she signed warrants against the two defendants.

Beverly Suzanne Beam testified that on the night in question she had been at The Keg, a tavern in the City of Raleigh, with another girl who was engaged to Blalock. They left the Keg and went to the other girl's apartment where Miss Beam had intended to spend the night. By prior arrangement she was to have had a date that night with Andrews while Blalock and the other girl also had a date. After Blalock and Andrews arrived,

she decided that she did not want to spend the night there and asked the defendants to take her home. Upon leaving the home of the other girl, the defendants drove to the home of Mrs. Hinton and parked there telling her they would be right back. About ten minutes later Blalock returned and asked her to come inside. When she entered the house she found a large crowd there including many of the witnesses who later testified in this case. Very soon after she got in the house, Thomas Moody grabbed her by the arm and hurt her. She ran out of the house but Moody and Blalock followed her and got her to return. When she returned to the house she went into a bedroom with Moody where they stayed for a few minutes before returning to the other room. Moody and Andrews talked for a few minutes and then Moody came over to her and told her they were going back into the bedroom. At this time Andrews slapped her several times and told her that she was going to do what he told her to do and nobody else. Upon their return to the bedroom, Moody told her that they were going to have sexual intercourse. She testified on *voir dire,* in the absence of the jury, that Moody told her that if she did not have intercourse with him she would not live to tell it, and that he gave her three examples of girls who had been beaten or killed in recent years. After Moody had intercourse with her, she testified that Andrews came in and told Moody to leave. Blalock came into the room and he and Andrews forced her to engage in unnatural sexual acts with them. Someone yelled that Mrs. Hinton was going to call the police and both men dressed and ran out of the bedroom. The defendants left the house and took her to 202 Linden Avenue where they left her. She ran from the house and met a policeman from whom she borrowed a dime to make a phone call. The policeman followed her to Watkins Grill where she called a cab. The owner of the grill asked if he could help her and she agreed to allow him to take her home. She and the grill owner got into a car driven by Deputy Sheriff Maylon Bagwell and after they had gone approximately two miles she told them she had been raped by two men whose identity she did not know. They took her to the police station where she identified the defendants from pictures shown her and she then signed warrants against them.

The State offered medical evidence from three doctors which was to the effect that the female organ of each of the prosecuting witnesses contained sperm cells which had apparently been deposited recently.

The defendants offered the testimony of several witnesses to the effect that they met Mrs. Hinton at 202 Linden Avenue on the night in question and that she accompanied them to her house on Edmunds Street where they were to have a party. Entrance to the house was gained by one of the witnesses climbing through a window because Mrs. Hinton had lost her key. The witnesses testified that as soon as they entered the house, Moody and Mrs. Hinton went to one of the bedrooms and that thereafter each of the men at the party went to the bedroom where they had intercourse with Mrs. Hinton. While Donald Jones was in the bedroom they heard a knock at the door and the voice of a man claiming to be a policeman. The people all tried to escape from the house but when the door was opened they found that it was the defendants. Moody and Blalock persuaded Miss Beam to come in and eventually Moody went to the back bedroom with her. There was no testimony from any of the witnesses that they believed anyone was being forced to engage in sexual relations against his or her will during the night.

In rebuttal the State offered the evidence of Thomas Moody who testified that on the night in question he was in the Hinton home and that he saw the defendant Andrews slap Miss Beam. He testified that he had intercourse with both of the prosecuting witnesses with their consent.

Each defendant was convicted by the jury of assault upon a female over twelve years of age with the intent to commit rape in the case of Beverly Suzanne Beam and with assault upon a female in the cases involving Patricia Ann Hinton. Each defendant was sentenced to fifteen years imprisonment in the cases involving Beverly Suzanne Beam and each was given a consecutive six months sentence and a $500 fine in the cases involving Patricia Ann Hinton. The defendants each appealed to the North Carolina Court of Appeals, assigning error.

*Robert Morgan, Attorney General, Eugene A. Smith, Assistant Attorney General, and Howard P. Satisky, Staff Attorney, for the State.*

*Hatch, Little, Bunn, Jones and Liggett, by E. Richard Jones, Jr., and William P. Few, for defendant appellants.*

HEDRICK, J.

[1]   By assignments of error numbers 1, 3, 4, 7 and 14, the defendants contend that the trial judge, during the course of the trial, made remarks and asked questions of some of the witnesses which amounted to an expression of an opinion by the judge in violation of G.S. 1-180. In North Carolina it is improper for a trial judge to question a witness for the purpose of impeaching his testimony. *State v. Perry*, 231 N.C. 467, 57 S.E. 2d 774 (1950). However, it is a well settled rule in this State that a trial judge may ask questions of a witness in order to obtain a proper understanding and clarification of the witness' testimony. *State v. Strickland*, 254 N.C. 658, 119 S.E. 2d 781 (1961); *State v. Humbles*, 241 N.C. 47, 84 S.E. 2d 264 (1954); *State v. Stevens*, 244 N.C. 40, 92 S.E. 2d 409 (1956); *State v. Furley*, 245 N.C. 219, 95 S.E. 2d 448. This rule is a necessary one in our system of criminal law since there are times during the course of a trial, and especially in a trial involving facts as complicated as in the present case, when the judge finds it necessary to ask the witness competent questions to aid in clarifying the witness' testimony. *State v. Hoyle*, 3 N.C. App. 109, 164 S.E. 2d 83 (1968); *State v. Perry, supra.*

We have examined the testimony of these witnesses and after considering the questions propounded by the judge, in light of all the attendant facts and circumstances, we believe that the questions asked by the judge were for the purpose of clarification and were not expressions of opinion, and did not tend to impeach the testimony of the witnesses. These assignments of error are overruled.

[2]   The defendants contend that the court erred in threatening to issue bench warrants for the arrest of any witnesses who testified that they participated in the crime of aiding and abetting prostitution. The record shows the facts to be as follows: Roger Watson, testifying for the defense, stated that everyone at the house that night, including himself twice, had intercourse with Pat Hinton. Following this testimony, Judge Carr excused the jury and called the solicitor's attention to the provisions of G.S. 14-203 and G.S. 14-204 relating to prostitution. He stated that he felt the witness had violated this statute but that he had grave doubts about the *corpus delicti*. When reminded by one of the defendant's attorneys that the witnesses were present, Judge Carr stated that he wanted them to know what the law was and what the consequences of their actions could be under the law. After the jury returned, the record shows that Donnie

Marshburn and Donald Jones took the witness stand and testified that each of the men present on the night in question took turns going into the bedroom of Pat Hinton where they had intercourse with her.

The record is clear that the remarks by Judge Carr had no adverse effect on the two witnesses that testified after he had informed them of the possible consequences of their testimony. This assignment of error is overruled.

The defendants argue that the court committed prejudicial error in allowing the solicitor on cross-examination to ask one of the defendant's witnesses whether he would be willing to take a lie detector test as to his testimony. The record discloses that the solicitor asked the witness Jones the following question: "Will you take a lie detector test regarding your testimony today." No objection appears in the record as to this question or the answer. Later, the witness was asked the same question and an objection was made by the attorney for the defendant Blalock who afterwards stated that he had no objection to the question being asked once more; whereupon, the question was asked the third time without any objection and the witness answered. Subsequently, an attorney for the defendant Andrews stated to the court that this is highly improper and asked the court to instruct the jury on the admissibility of lie detector tests in North Carolina. Later, when the question was asked for the fourth time, counsel for one of the defendants objected.

[3-5]  It is the general rule that unless an objection is made at the proper time, it is waived. *Stansbury*, N.C. Evidence, 2d Ed., Sec. 27, page 49. In case of a specific question, objection should be made as soon as the question is asked and before the witness has had time to answer. *Stansbury*, N.C. Evidence, 2d Ed., Sec. 27, page 51, and cases cited thereunder. If testimony offered by a witness is not competent, objection to its admission should be interposed to the question at the time it was asked and when the objection is not taken in apt time it is waived. *State v. Hunt*, 223 N.C. 173, 25 S.E. 2d 598 (1943). The defendants waived any objections they might have had to the question by failing to object in apt time the first three times it was asked. This assignment of error is overruled.

[6]  By assignment of error 16, based on exceptions 8, 9 and 21, the defendants challenged the court's rulings in denying their motions for judgment as of nonsuit. The defendants have failed

State v. Blalock

to argue this assignment in their brief, and the same is therefore deemed abandoned. Moreover, in their brief, the defendants state: "Defendants concede that there was sufficient evidence, taken in the light most favorable to the State, to sustain a conviction for rape in each case."

[7] By assignment of error 17 the defendants contend that the court committed prejudicial error in defining assault as an attempt or offer with force and violence or with rudeness to do hurt to another. The defendants in this argument have lifted one sentence out of the court's charge and attempted to show that the definition is incorrect and inadequate. When the charge is considered contextually, it is our opinion that the court properly and adequately instructed the jury as to all the elements of the crimes for which the defendants were being tried. This assignment of error is without merit.

[8, 9] By assignments of error numbers 18, 20, 21 and 22, the defendants contend that the court committed prejudicial error in reviewing the evidence for the State and the defendants, and in stating their contentions. Generally, an inadvertence in stating the contentions of the parties or in recapitulating the evidence must be called to the trial court's attention in time for correction. 3 Strong, N. C. Index 2d, Criminal Law, Sec. 113, page 15. The record fails to show that this was done in the instant case. We have examined each portion of the charge to which all these exceptions are directed and find no material misstatement of the evidence or contentions of the State or the defendants. Those portions of the charge excepted to related to subordinate features of the case, and even if it can be said that the judge inadvertently misstated some of the contentions, the defendants have failed to show that they were in any way prejudiced by such statements. These assignments of error are overruled.

The defendants contend that the judge committed error in his charge by the unqualified use of the words "assault" and "rape" or "raping" in referring to the charges against the defendants. They argue that the judge, by the use of these words, was leading the jury to assume that the facts in controversy had been established. We do not agree with this contention. The charge, when read as a whole, does not show that the judge in any manner expressed any opinion in violation of G.S. 1-180 in reviewing the evidence or stating the contentions of the defendants. This assignment of error is without merit.

We have examined all of the defendants' exceptions and assignments of error brought forward on this appeal and conclude that the defendants had a fair trial in the superior court free from prejudicial error.

No error.

BROCK and BRITT, JJ., concur.