STATE OF NORTH CAROLINA v. ROBERT GRIFFIN, JR.

No. 6910SC170

(Filed 30 April 1969)

1. **Constitutional Law § 32;   Criminal Law § 66—   right to counsel at lineup**

   Out-of-court lineup identification of defendant by armed robbery victim was not rendered unconstitutional by fact that defendant was not represented by counsel and did not waive his right to counsel at the lineup, where defendant was not a suspect in the armed robbery in question at the time of the lineup, the lineup was arranged to give the robbery victim an opportunity to view four other persons who were suspects in the robbery, and defendant was in custody on another charge and was placed in the lineup only as a filler.

2. **Constitutional Law § 32;   Criminal Law § 66—   in-court identification — lineup identification**

   In this armed robbery prosecution, the evidence on *voir dire* fully supports the trial court's findings of fact that the victim's in-court identification of defendant as the perpetrator of the robbery was an independent identification based upon what the witness observed at the time of the robbery and was not tainted by any illegal lineup.

3. **Constitutional Law § 32;   Criminal Law § 66—   lineup identification — in-court identification having independent origin**

   In this armed robbery prosecution, the court properly admitted the in-court identification of defendant as the perpetrator of the robbery where a prior out-of-court lineup identification of defendant was constitutional and the in-court identification was not fruit of the lineup but was an independent identification based upon what the witness observed at the time of the robbery.

4. **Criminal Law § 155.5—   failure to aptly docket record on appeal**

   The appeal is subject to be dismissed under Rule 48 where the record on appeal was not filed within 90 days after the date of the judgment appealed from as required by Rule 5.

APPEAL by defendant from *McKinnon, J.,* 30 September 1968, WAKE County Superior Court.

Robert Griffin, Jr., (defendant) was charged under two bills of indictment with the felony of armed robbery of Sherrill Houston Styers (Styers) and with the felony of larceny of a 1965 model Ford automobile owned by Checker Cab Company of Raleigh, Inc., (Checker). The automobile was valued at $2,500. The two cases were consolidated for trial. The defendant entered a plea of not guilty to both charges.

The evidence on behalf of the State tends to show that Styers was employed by Checker as a taxicab driver; at 1:00 a.m. on 27 April

1968, he was parked at a well-lighted taxicab stand in the vicinity of the bus station on West Morgan Street in the City of Raleigh; the defendant and an unidentified male companion approached the taxicab and engaged Styers to drive them to a house on Carnage Street; they did not recall the street number of the house; they stated, however, that they would recognize the house on sight; they got in the back seat of the taxicab, the defendant sitting on the right side and his companion sitting immediately behind Styers on the left side; when the taxicab rounded the corner at Carnage Street, Styers turned on the interior light, which remained on for some five minutes or longer; the passengers recognized the house and Styers stopped; the defendant then undertook to pay the fare of ninety-five cents; after taking fifteen pennies and other change from his pocket, the defendant counted out ninety cents, one coin at a time; the method of payment on the part of the defendant was such as to cause Styers to become concerned about the passengers' intentions; as a result of this concern, Styers began to look very closely at the defendant; as Styers started to turn off the taxicab's meter, the defendant put a knife to his throat and ordered him out of the taxicab; the defendant and his companion then took money from Styers' pockets and his wristwatch; the companion ordered Styers to walk in front of him across a school yard and down an embankment, at which point he left Styers and returned to the taxicab; defendant and his companion then drove off in the taxicab, with the defendant as driver and the companion as passenger.

Styers immediately reported the matter to police authorities, who commenced an investigation. The taxicab was found abandoned later the same day. During the course of this investigation, Styers was shown numerous police photographs, from which he picked some five or six as showing physical features similar to those of the robbers. One of the pictures was actually of the defendant, but Styers did not recognize him because the picture had been taken several years before.

During May 1968 the police detective investigating the matter arrested four persons as suspects in a robbery unrelated to the one in question. The defendant was not one of these four. The detective, nevertheless, decided that these four suspects might have been involved in the Styers robbery. Therefore, a lineup was arranged in order to give Styers an opportunity to view them. The jailer who organized the lineup was instructed by the detective to place additional persons in it as "fillers" so that the lineup would consist of some seven or eight persons. It so happened that one of the "fillers" was the defendant. At that time the defendant was not a suspect in

the Styers robbery, and he was actually in jail on an unrelated charge. On viewing the lineup, Styers immediately pointed out the defendant as being one of the two men who had robbed him.

Before the defendant was identified by Styers at the trial, a *voir dire* examination was conducted on the question of the validity of such an in-court identification. After the State and defendant were given ample opportunity to present evidence for the court's consideration, Judge McKinnon found that the defendant was not a suspect of the robbery in question at the time of the lineup; he was not represented by counsel; and he had not waived any of his constitutional rights. He further found that Styers had ample opportunity to observe the defendant during the commission of the offense. He then held that the lineup identification could not be introduced into evidence. However, he held that it was competent for the jury to consider the in-court identification because Styers had ample opportunity to observe the defendant on 27 April 1968, which would permit him to recognize and identify the defendant at the trial, and because such in-court identification was not tainted by any procedure in the conduct of the lineup. The jury returned and Styers was permitted to identify the defendant as one of the two robbers.

The jury returned a verdict of guilty on both charges. On 3 October 1968 Judge McKinnon entered a judgment that the defendant be confined in the State's prison for a term of not less than twenty years nor more than twenty-five years on the charge of armed robbery and that he be confined in the State's prison for a term of ten years, to run concurrently, on the charge of larceny. The defendant appealed to this Court.

*Attorney General Robert Morgan and Assistant Attorney General Bernard A. Harrell for the State.*

*Howard F. Twiggs for defendant appellant.*

CAMPBELL, J.

The defendant's first contention is that his rights under the Fifth and Sixth Amendments to the Constitution of the United States, as made applicable to the states, by the Fourteenth Amendment, were violated when he was identified by Styers in a lineup as one of the two men who committed the crimes charged. He relies upon the recent cases of the United States Supreme Court which have held that:

". . . [A] post-indictment pretrial lineup at which the accused is exhibited to identifying witnesses is a critical stage of

the criminal prosecution; that police conduct of such a lineup without notice to and in the absence of his counsel denies the accused his Sixth Amendment right to counsel and calls in question the admissibility at trial of the in-court identifications of the accused by witnesses who attended the lineup." *Gilbert v. California,* 388 U.S. 263, 18 L. Ed. 2d 1178, 87 S. Ct. 1951.

While a lineup such as the one in the instant case does not violate the privilege against self-incrimination, it is constitutional error to admit "in-court identifications without first determining that they were not tainted by the illegal lineup but were of independent origin." *Gilbert v. California, supra; U. S. v. Wade,* 388 U.S. 218, 18 L. Ed. 2d 1149, 87 S. Ct. 1926.

In *Wade* the following appears:

"We think . . . the proper test to be applied in these situations is that quoted in *Wong Sun v. United States,* 371 US 471, 488, 9 L ed 2d 441, 455, 83 S Ct 407, ' "[W]hether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." . . .' . . . Application of this test in the present context requires consideration of various factors; for example, the prior opportunity to observe the alleged criminal act, the existence of any discrepancy between any pre-lineup description and the defendant's actual description, any identification prior to lineup of another person, the identification by picture of the defendant prior to the lineup, failure to identify the defendant on a prior occasion, and the lapse of time between the alleged act and the lineup identification."

[1]          Unlike *Wade* and *Gilbert* there was no illegal lineup in the instant case. On the *voir dire* examination the testimony revealed that at the time of the lineup the defendant was in custody, charged with a crime unrelated to cases on trial, and that he was not represented by counsel and had not waived any of his constitutional rights. However, he had not been accused of the crimes in question nor was he a suspect. The lineup was arranged in order for Styers to view four individuals who had been arrested for armed robbery of a service station on North Boulevard in Raleigh and who, the police believed, might have robbed Styers. It was not arranged in order for Styers to view the defendant, and the defendant participated in the lineup solely as a "filler" (*i.e.,* one added to the lineup in order to make the identification of the suspect more accurate and

reliable). Therefore, the failure to provide counsel under these circumstances was not a denial of any constitutional rights, and this is not altered by the fact that subsequent to the crimes, but prior to the lineup. Styers had selected a photograph of the defendant as a "look-alike." This picture was not a recent one and Styers did not recognize the person in the photograph as being the one who had robbed him. He selected the picture, along with four or five others, because it possessed a physical characteristic, such as a nose or mouth, similar to the assailant.

It is noted that the lineup was conducted in a fair and impartial manner. All of the participants were Negro males dressed in casual clothing unlike that worn on the night in question, and there was nothing in their dress which would unduly attract the attention of Styers to any specific person. The participants varied in height, but this slight variance was not such as to render the lineup unfair. They also varied in weight, but all of them were of slender to medium build. They were about the same age. It is also noted that the description which Styers gave the investigating officer immediately after the commission of the offenses was similar to the defendant's actual physical appearance.

[2] Unlike *Wade* and *Gilbert*, the in-court identification in the instant case was found by Judge McKinnon to be from an independent origin and not tainted by any illegal lineup. The findings of fact and conclusions of law on the *voir dire* examination by Judge McKinnon were fully supported by the evidence introduced on this *voir dire* examination.

Judge McKinnon fully complied with the requirements of what a trial judge should do in order to satisfy himself that the in-court identification is competent for the jury to consider and that it is not tainted by any procedure in the conduct of the lineup. Compare with *Rivers v. United States*, 3 Cr. L. 3263, 400 F. 2d 935 (5th Cir., 1968).

[3] What was said in *State v. Williams*, 274 N.C. 328, 163 S.E. 2d 353, is equally appropriate in this case:

"The in-court identification of the defendant by [Styers] was, therefore, not 'fruit of a poisonous tree.' First, the lineup was not 'a poisonous tree.' Second, the in-court identification was not fruit of the lineup, but was an independent identification based upon what the witness observed at the time of the robbery."

Furthermore, in the instant case no evidence of the lineup identification was admitted in the trial before the jury.

The defendant's first contention is without merit.

We have considered the defendant's second and third contentions and have found them to be without merit. Since specific discussion of those contentions would not be beneficial to the Bench and Bar, we refrain from same.

**[4]** The record on appeal in the instant case was not filed within ninety days after the date of the judgment appealed from. Therefore, the appeal may be dismissed under Rule 48 of the Rules of Practice in the Court of Appeals for failure to comply with Rule 5. We have nevertheless considered this appeal on its merits.

The record shows that the defendant has had a fair trial and no prejudicial error has been shown.

Affirmed.

MALLARD, C.J., and MORRIS, J., concur.